In the Matter of Thomas Cullen DAVIS and Karen Joyce Davis, Debtors.

Sandra DAVIS, Appellant,

v.

Thomas Cullen DAVIS, Appellee.

No. 95–11112.

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1997.

St. Clair Newbern, III, Fort Worth, TX, for appellant.

Ronald Ray Payne, Hesse & Jones, Dallas, TX, for appellee.

Before DUHÉ and DENNIS, Circuit Judges, and DUVAL [1], District Judge.

DENNIS, Circuit Judge:

As a general rule the Bankruptcy Code provides that property exempted from the estate is not liable for any of the debtor's prepetition debts. 11 USC § 522. The basic question in this case is whether § 522(c)(1) creates an exception which authorizes the seizure of exempted property to collect non-dischargeable debts owed to the debtor's former spouse for alimony, maintenance, and child support. The bankruptcy and district courts held that a judicial lien securing such a debt against exempted property is nonavoidable but that the former spouse may not levy upon the exempted property to pay the debt. We vacate the judgments and remand the case to the bankruptcy court for further proceedings. The Bankruptcy Code provides that an individual debtor may elect to exempt from property of the estate any property that is exempt under state, local, and non-bankruptcy federal law, § 522(b); and that property so exempted is not liable during or after the case for any debt of the debtor that arose, or is treated as if it had arisen, before the commencement of the case, except, *inter alia*, any debt to a former spouse for alimony, maintenance, or child support. §§ 522(c)(1) & 523(a)(5). The text, purpose and history of § 522(c)(1) indicate that it creates an exception to § 522 that enables the former spouse of a debtor to levy upon the debtor's otherwise exempt property to enforce payment of alimony, maintenance, and child support debts.

## Background

Appellant Sandra Davis (Sandra) and her former husband, Thomas Cullen Davis (Thomas), the debtor in bankruptcy, were divorced in 1968. Pursuant to their property settlement, support and child custody agreement, and divorce judgment, Thomas agreed to make monthly payments to Sandra through January 1, 1991, and thereafter to pay her other sums subject to certain contingencies. Thomas made all payments until he filed bankruptcy in 1987. In 1979 Thomas married Karen Joyce Davis, also a debtor in this action. In 1984 Thomas acquired the property that he claims as his homestead. The property is unencumbered and valued at $500,000.

Thomas and Karen filed a voluntary chapter 7 petition in 1987, which was converted to a chapter 11 case. They elected to exempt from the estate property that was exempt under the state homestead exemption laws.

---

1. District Judge of the Eastern District of Louisiana, sitting by designation.

In an adversary bankruptcy court proceeding, Thomas sought a determination that his indebtedness pursuant to the property settlement agreement and divorce Judgment was dischargeable. Sandra counterclaimed, asserting that the indebtedness was nondischargeable under § 523(a)(5). In 1991 the parties compromised and acceded to a final consent judgment by the bankruptcy court declaring the debt to be for nondischargeable alimony, maintenance, and child support under § 523(a)(5) and awarding Sandra a principal sum of $250,000 plus $50,000 in attorney's fees.

Sandra moved in bankruptcy court for turnover relief ordering Thomas to execute a warranty deed conveying the homestead to her because she was otherwise unable to enforce the judgment. After a hearing, the bankruptcy court concluded that Sandra could not levy upon Thomas's exempted homestead property to collect her judgment for alimony, maintenance, and child support, holding that the Bankruptcy Code does not preempt the state constitutional homestead exemption law. *In re Davis*, 170 B.R. 892, 898 (Bankr.N.D.Tex.1994). The bankruptcy court also held that Sandra was not entitled to turnover relief on state law grounds. We pretermit discussion of that issue, however, because it is rendered moot by our disposition of this case. Sandra appealed. The district court affirmed. *In re Davis*, 188 B.R. 544 (N.D.Tex.1995). Sandra appealed to this court.

### Standard of Review

■ This appeal presents solely legal questions which this court reviews *de novo*. *Henderson v. Belknap (Matter of Henderson)*, 18 F.3d 1305, 1307 (5th Cir.) (citing *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 434 (5th Cir. 1994)), *cert. denied,* —— U.S. ——, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994).

### Discussion

■ The commencement of a voluntary bankruptcy case creates an estate comprised of legal and equitable interests of the debtor in property, wherever located and by whomever held. § 541. Generally, an individual debtor may exempt property from the estate that falls within one of two exemptible categories referred to by the Bankruptcy Code in § 522(b): (1) a category of eleven classes of property specified by the Bankruptcy Code itself in § 522(d); and (2) a category comprised of "any property that is exempt under [nonbankruptcy] Federal law ... or State or local law....". § 522(b)(2)(A). In exempting property from the estate, the debtor must use either the first, or in the alternative, the second category. If the state law that is applicable to the debtor specifically does not authorize this election, however, that state "opts out" of the § 522(d) list. When a state opts out, its debtors are limited to the exemptions provided by the second category, *i.e.,* by nonbankruptcy federal, state and local law. *See Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991). In the present case, Thomas and Karen, his present co-debtor spouse, chose to have the homestead property exempted from the estate under the second category, which uses state, local and nonbankruptcy federal law to identify and quantify the property to be exempted. § 522(b)(2)(A).

■ Property that is properly exempted under § 522 is, as a general rule, immunized by § 522(c) against liability for prebankruptcy debts. *Owen v. Owen, Id.* There are, however, several significant exceptions. Section 522(c) reads, in pertinent part, as follows:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;

(2) a debt secured by a lien that is—

(A)(i) [ & ii] [not avoided or void under specified provisions of this title]; or

(B) a tax lien, notice of which is properly filed; or

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution.

■ The debts excepted from the protection of § 522(c), for which exempted property remains liable, are: (1) nondischargeable debts for alimony, maintenance, and child support, § 523(a)(5), and taxes, § 523(a)(1); (2) valid liens that may not be avoided under the trustee's powers and certain tax liens in exempt property that are not affected by the bankruptcy; and (3) nondischargeable debts for fraud and willful injury owed to a federal depository institutions regulatory agency acting as a conservator, receiver, or liquidating agent under §§ 523(a)(4) & (6). The debt at issue in the present case is a debt of a kind specified in § 523(a)(5), which makes nondischargeable any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ... or property settlement agreement...." Id. Accordingly, property that is exempted under § 522 and therefore immune from all other liability, nonetheless remains liable for and may be seized to pay alimony, maintenance, and child support debts and other obligations excepted from § 522(c) protection. See Owen v. Owen, 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991) ("Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts.") (emphasis added); Walters v. U.S. Nat. Bank of Johnstown, 879 F.2d 95, 97 (3d Cir.1989) (tax and alimony and child support debts "are neither dischargeable nor exemptible."); Resnick, Weintraub & Resnick Bankruptcy Law Manual ¶ 4.08 at 4–54 (4th ed. 1996) ("Exempt property may be seized to pay nondischargeable tax liabilities and obligations to pay alimony, maintenance, or support."); Epstein et. al., Bankruptcy, § 8–1 n. 17 (1992) ("Exemptions are not effective, however, with respect to two types of nondischargeable

debts: tax debts and debts for alimony, maintenance, or child support."); Campbell et al., Creditors' Rights Handbook, A Guide to the Debtor–Creditor Relationship, § 20.03[4] (1993) ("Exempt property may be used to satisfy certain tax debts or for obligations for child support or alimony."); Epstein & Nickles, Debt, Bankruptcy, Article 9 and Related Laws, 759 (1994) ("After bankruptcy, creditors with domestic claims excepted from discharge by section 523(a)(5) will have recourse to exempt property.").

This reading is in accord with the legislative history of § 522(c). Referring to that section the Senate report, with which the House report is virtually identical, reads:

> Subsection (c) insulates exempt property from prepetition claims other than tax claims (whether or not dischargeable), and other than alimony, maintenance, or support claims that are excepted from discharge. The rule of Long v. Bullard, 117 U.S. 617 [6 S.Ct. 917, 29 L.Ed. 1004] (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt property.

S.Rep. No. 95–989, 95th Cong., 2nd Sess. 76, reprinted in 1978 U.S.C.C.A.N. 5787, 5862; see H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 361, reprinted in 1978 U.S.C.C.A.N. 6317.

The drafters of the exemption section thus were aware that exempt property would be protected against some, but not all, nondischargeable debts. See Walters v. U.S. Nat. Bank of Johnstown, 879 F.2d 95, 97 (3d Cir.1989). Moreover, it is clear that the legislative aim was to preserve fully a former spouse's legally vested right to alimony, maintenance, and child support on an equal footing with a creditor's valid lien that was obtained before bankruptcy on exempted property, including exempted homestead property. See Farrey v. Sanderfoot, 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) ("Congress generally preserved [the Long v. Bullard] principle [that valid liens obtained before bankruptcy could be enforced on exempt property, including otherwise exempt homestead property] when it comprehensively revised bankruptcy law

with the Bankruptcy Reform Act of 1978, . . . 11 U.S.C. § 522(c)(2)(A)(i)."); *Owen v. Owen,* 500 U.S. 305, 309, 111 S.Ct. 1833, 1835–36, 114 L.Ed.2d 350 (1991) ("[T]he rule of *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) [was] codified in § 522.").

Our interpretation of § 522(c) is confirmed by the legislative history of § 522(c)(3), the third exception added by the Crime Control Act of 1990, Pub.L. No. 101–647, relating to the enforcement of certain nondischargeable debts owed to a federal depository institutions regulatory agency acting as a conservator, receiver, or liquidating agent. Referring to that new exception, the section by section analysis pursuant to the remarks of Representative Charles Schuman on the Banking Law Enforcement section of the Crime Control Act of 1990 provides:

> Currently, section 522(c) provides that the property exemptions described elsewhere in section 522 do not apply in the case of tax obligations, alimony and child support responsibilities, or security agreements in which the otherwise exempt property is pledged as collateral. The new exception would apply to certain debts owed by institution-affiliated parties to federal depositary institutions regulatory agencies acting in their capacity as receiver, conservator, or liquidating agent. Specifically, the debts covered are debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, as described in section 523(a)(4); and for willful and malicious injury to another entity or to the property of another entity, as described in section 523(a)(6). These acts represent the highest form of financial criminality against a federally insured depositary institution by a person entrusted under the law with the care and safekeeping of the institution.

136 Cong.Rec. E3687 (Nov. 2, 1990). Also, Senator Biden, Chairman of the Senate Judiciary Committee, remarked:

> I accepted changes drafted by the House only because they maintained the core Senate-passed bankruptcy language that prevents all S & L wrongdoers from discharging their debts by filing for bankruptcy. The final language specifically preempts State homestead laws, which would otherwise allow S & L crooks to retain lavish homes through the excessive protections in some State bankruptcy laws.

> Mr. President. . . . [u]nder the bill, major S & L offenders will spend time behind bars. Their assets will be seized. And every possible dollar will be recovered for depositors and taxpayers.

136 Cong.Rec. S17602 (Oct. 27, 1990).

Bankruptcy courts have consistently interpreted the tax and tax lien provisions of §§ 522(c)(1) & (2), correlative to the alimony provision of § 522(c)(1), to authorize creditors and lienholders to reach the exempted property of the debtor to satisfy tax liabilities. *E.g., In re Holl,* 35 B.R. 206 (Bankr. D.Haw.1983) (IRS was able to levy on exempted proceeds of sale of homestead to satisfy a debt for a tax nondischargeable under § 523(a)(1)); *In re Hebermehl,* 132 B.R. 651 (Bankr.D.Colo.1991) (same as to exempted wages); *In re Braddock,* 149 B.R. 636 (Bankr.D.Mont.1992) (tax lien took priority over homestead exemption as to exempt proceeds derived from sale of homestead). *Accord: Davenport v. U.S.,* 136 B.R. 125 (W.D.Ky.1991); *Crow v. Long,* 107 B.R. 184 (E.D.Mo.1989). *See also In Re Reed,* 127 B.R. 244 (Bankr.D.Haw.1991) (tax lien could be enforced against exempt pension plan contributions).

Section 522(c)(1) was not intended, as the debtor argues and the bankruptcy and district courts concluded, merely to preserve judgments and judicial liens securing alimony, maintenance, and child support debts against exempted property. That purpose is effectuated by § 522(f)(1), which excepts from the debtor's § 522 right to avoid the impairment of the fixing of liens on exempted property, *inter alia,* judicial liens securing alimony, maintenance, and child support debts. Section 522(f)(1), in pertinent part, provides:

> (f)(1) Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been enti-

tled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt—

(i) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement; and [to the extent that such debt is unassigned and is actually in the nature of alimony, maintenance or support.]

The context in which § 522(c)(1) occurs, the text of the Bankruptcy Code as a whole, including particularly § 522(b), (c) & (f) *in pari materia,* and the legislative history of those provisions, clearly show that § 522(c)(1) does not redundantly duplicate the lien preservation function of § 522(f)(1)(A)(i).

The bankruptcy and district courts erroneously concluded that the Bankruptcy Code does not preempt the state homestead exemption laws. They failed to recognize the scope of the federal preemption of the field of bankruptcy law or the exclusivity of the federal law basis of the debtor's qualified right to exempt property from the bankruptcy estate.

 The power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount. U.S. Constitution, Art. I, § 8, cl. 4; *International Shoe Co. v. Pinkus,* 278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929); *Pereira v. United Jersey Bank, N.A.,* 201 B.R. 644, 678 (S.D.N.Y.1996). Congress exercised this power by enacting national, uniform bankruptcy laws, the most recent of which is the Bankruptcy Code, that necessarily exclude or displace any conflicting state regulation. *International Shoe Co. v. Pinkus,* 278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929). Consequently, states may not pass or enforce laws to interfere with or complement the Bankruptcy Code or to provide additional or auxiliary

regulations. *See id.* at 266, 49 S.Ct. at 110–11.

 The Bankruptcy Code provides that the commencement of a voluntary bankruptcy case creates an estate comprised of legal and equitable interests of the debtor in property, wherever located and by whomever held. § 541. Under the code, an individual debtor has a qualified right, under defined circumstances, to exempt from the estate the same property that is exempt from levy under state, local, and nonbankruptcy federal law. § 522(b)(2)(A). Property that is exempted from the estate is immunized against liability for prebankruptcy debts, subject to the exception of, *inter alia,* debts for alimony, maintenance, child support, taxes and other liabilities specified by the code. § 522(c). The code does not in such cases, however, preserve or effectuate the state exemption laws with all of their built in characteristics, as the bankruptcy and district courts evidently assumed. The code uses the state exemption laws only as a means of identifying and quantifying the property that the debtor may exempt under federal law from the bankruptcy estate. *See Owen,* 500 U.S. at 308, 111 S.Ct. at 1835 ("Property that is properly exempted under § 522 is **(with some exceptions)** immunized against liability for prebankruptcy debts.") (emphasis added). *See also id.* at 313, 111 S.Ct. at 1838 ("[I]t is [not] inconsistent with the Bankruptcy Code's 'opt-out' policy, whereby the states may define their own exemptions, to refuse to take those exemptions with all their built-in limitations.... We have no basis for pronouncing the opt out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains."). *Cf. In re Maddox,* 15 F.3d 1347, 1351 (5th Cir.1994) ("[A]lthough a state may elect what property is exempt under state law, federal law determines the availability of lien avoidance under § 522(f).") (quoting *In re Kelly,* 133 B.R. 811, 813 (Bankr.N.D.Tex. 1991)). By the same token, federal law determines whether property is exempted and immunized against seizure and sale for prebankruptcy debts. § 522. The debtor's qualified right to exempt property from the estate, and the relationships *between the* debtor, his creditors, and exempted *or non-*

exempted property with regard to prebankruptcy debts, are governed exclusively by federal law. Consequently, it is clear that the state homestead exemption law has been superseded by the Bankruptcy Code, and that the state law cannot alter the obligations of a bankruptcy debtor and his creditors as provided for by federal bankruptcy law. *Pinkus,* 278 U.S. at 265, 49 S.Ct. at 110; *See In re John Taylor Company,* 935 F.2d 75, 78 (5th Cir.1991). For these reasons, we conclude that the state homestead exemption law is inoperative against the debtor's former spouse in this case and that she is entitled under the Bankruptcy Code to proceed against the debtor's otherwise exempted property to satisfy her alimony, maintenance, and child support judgment. Because she may do so by ordinary legal proceedings, she need not seek extraordinary relief under the Texas Turnover Statute. Accordingly, the judgments below are VACATED and the case is REMANDED to the bankruptcy court which is directed to allow the appellant to obtain a writ of execution and all other relief to which she is entitled by law in accordance with this opinion.

DUHÉ, Circuit Judge, dissenting:

Because the majority fails to distinguish between the right and the remedy in this case, and because the majority finds that § 522 of the Bankruptcy Code, without specifically so providing, preempts the Texas Homestead Law, I respectfully dissent.

Bankruptcy Judge Felsenthal decided this case correctly. *In re Davis,* 170 B.R. 892 (Bankr.N.D.Tex.1994). He was affirmed by district Judge Fitzwater. *In re Davis,* 188 B.R. 544 (N.D.Tex.1995). I adopt both opinions and append them hereto.

There is little to add to what Judges Felsenthal and Fitzwater have written. Basically, Appellant contends that Bankruptcy Code § 522(c)(1) preempts Texas Homestead Law either by the "pervasive scheme of bankruptcy legislation" or by an actual conflict between state and federal law. As Judge Felsenthal held, there is no "pervasive scheme of bankruptcy law" applicable to this matter because the Code specifically adopts state law exemptions. When it adopted this scheme, Congress was well aware that state law exemptions would vary. It accepted that variance. There is, therefore, no "pervasive

scheme of bankruptcy law" on the question of exemptions.

Nor, as Judges Fitzwater and Felsenthal found, is there an actual conflict between the Texas Homestead Law and § 522(c)(1). The latter provides only for the liability of exempt property. It does not provide a means for execution as a remedy to enforce that right. The Code does not provide a means by which a creditor may execute a judgment on exempt property which may be held liable. For this, Federal Rule of Civil Procedure 69 dictates that state law must be relied upon. In Texas, because of the Homestead Law, there is no turnover remedy.

The majority takes comfort in the Supreme Court's opinion in *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). That case deals, however, only with lien avoidance on exempt property, which is not an issue in this case. It does not deal with the enforcement of the lien. It states only that property immunized by § 522 nonetheless remains liable for spousal support obligations. In this case the lien created by the judgment for spousal support obligations was fully recognized, and the debtor's property remains subject to it. That is not an issue.

For these reasons I respectfully dissent.

### APPENDIX

In re Thomas Cullen DAVIS and Karen Joyce Davis, Debtors.

Thomas Cullen DAVIS, Plaintiff,

v.

Sandra DAVIS, Defendant.

Bankruptcy No. 487–41796–MT–11.

Adv. No. 394–3070.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Aug. 5, 1994.

MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Sandra Davis, the former spouse of the debtor, Thomas Cullen Davis, moves the

court to order the United States Marshal to seize and sell the debtor's homestead in Fort Worth, pursuant to the Texas turnover statute, Texas Civ.Prac. & Rem.Code § 31.002(a).[1] The debtor contends that Ms. Davis cannot use the Bankruptcy Code to preempt the Texas protection of his homestead from execution on a judgment, even a judgment for family support.

In January 1984, Mr. Davis purchased, with proceeds from his father's estate, a house for $750,000. On July 2, 1987, Mr. *894 Davis and his current wife, Karen Davis, filed a petition under Chapter 11 of the Bankruptcy Code in the Fort Worth Division of this court. They filed schedules of assets and liabilities in which they elected exemptions under non-bankruptcy law, claiming certain property, including the house,[2] as exempt under the laws of the state of Texas. They scheduled the value of their homestead at $500,000. No liens encumbered the property. No party objected, and the court allowed the exemptions.

Ms. Davis filed this adversary proceeding on July 30, 1987, to determine the dischargeability of certain family support obligations under 11 U.S.C. § 523(a)(5). On November 19, 1991, the court entered an agreed judgment declaring that $250,000 of support and $50,000 of related attorneys' fees constituted non-dischargeable debt under § 523(a)(5). Mr. Davis neither paid that support obligation nor offered a payment schedule or plan; he offers no explanation. Ms. Davis seeks to have the homestead sold to pay Mr. Davis' nondischargeable family support obligations.

Process to enforce the agreed judgment for the payment of money, on the non-dischargeable family support obligations, is by writ of execution. Fed.R.Civ.P. 69(a). Rule 69(a) provides that the procedure on execution shall be in accordance with the practice and procedure of the state of Texas, "except

that any statute of the United States governs to the extent it is applicable." Id.

Ms. Davis does not contend that any provision of the Bankruptcy Code directs the method or procedure for the execution of the $300,000 judgment. Ms. Davis does not assert that the debtor's homestead, having been exempted from the bankruptcy estate, remains property of the estate subject to a turnover to a trustee under 11 U.S.C. § 542 and a sale under § 363. The court accordingly applies the Texas practice and procedure as made applicable by Rule 69(a).

Ms. Davis invokes the Texas turnover statute in aid of the execution of the judgment but contends that § 522(c)(1) of the Bankruptcy Code constitutes a federal statute that preempts the Texas statute's protection of exempt property. Mr. Davis counters that the Texas turnover statute cannot be employed because real estate is subject to levy and that the Bankruptcy Code does not override or preempt the Texas homestead exemption.

The Texas turnover statute provides in pertinent part:

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

(1) cannot readily be attached or levied on by ordinary legal process; and

(2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

(1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control together with all documents or records related to the property, to a designated sheriff or constable for execution;

Texas Civ.Prac. & Rem.Code §§ 31.002(a) and (b)(1).

---

1. Bankruptcy Rule 7069 makes applicable Fed. R.Civ.P. 69, which makes applicable the state execution statute.

2. Mrs. Davis disputes whether Mr. Davis' current wife owns an interest in the homestead. See Memorandum in Law in Support of Application for Turnover Order and Other Relief in Aid of Judgment, p. 2.

The granting or denying of an application for turnover order under § 31.002 is addressed to the discretion of the trial court. *Barlow v. Lane,* 745 S.W.2d 451 (Tex.App.—Waco 1988).

The statute contains several requirements. First, Ms. Davis must be a judgment creditor. On November 19, 1991, this court entered a judgment in favor of Ms. Davis, making her a judgment creditor. Second, the judgment creditor must seek assistance from "a court of appropriate jurisdiction." Tex.Civ.Prac. & Rem.Code § 31.002(a). Subsection (d) of § 31.002 permits the judgment creditor to seek this assistance in the same proceeding in which the judgment is *895 rendered. She has done that; this is a court of appropriate jurisdiction. Third, the debtor must own the property with which the judgment creditor seeks to satisfy her judgment. Mr. Davis owns the property.

Two further requirements restrict the type of property subject to a court-ordered turnover under § 31.002 to satisfy judgments. The first requirement is that the property "cannot readily be attached or levied on by ordinary legal process." Tex.Civ.Prac. & Rem.Code § 31.002(a)(1). The second requirement is that the property "is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." Tex.Civ. Prac. & Rem.Code § 31.002(a)(2).

### Ordinary Legal Process

Ms. Davis relies on *Pace v. McEwen,* 617 S.W.2d 816, 819 (Tex.App. 14 Dist.1981),[3] to meet the first requirement. She argues that Mr. Davis' assertion of the homestead exemption "justifies this turnover proceeding even though real property is generally subject to attachment or levy by ordinary legal process." The *Pace* court held that if the debtor's property was his homestead and therefore exempt, "it certainly could not readily be attached or levied on by ordinary legal process." *Id.* The *Pace* court rea-

soned that a creditor should not be required to insist on a forced sale under a writ of execution and run the risk of a damages award in a suit for wrongful execution on exempt property. Indeed, a creditor should not be required to exhaust in vain every remedy before seeking turnover relief.

Logically, if state law through its exemption provisions bars levy or attachment of exempt property, that property cannot be readily attached or levied. Yet, the statute addresses the exemption protection in its next requirement. The court must give meaning to each requirement of the statute. See *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 970–71 (5th Cir.1981). The court therefore defers the analysis of the property's exempt status to the second requirement and reads the first requirement as addressing whether a particular type of property is ordinarily subject to levy. Real property is a type of property ordinarily subject to levy.

Another Texas court has analyzed this requirement with emphasis on how "readily" property may be attached or levied. In *Hennigan v. Hennigan,* the court found that an attorney's testimony that he did not intend to voluntarily pay the judgment and his refusal to attend two depositions concerning his assets "made it abundantly clear that his moneys could not be readily attached." 666 S.W.2d 322, 324 (Tex.App. 14 Dist.1984). Similarly, Ms. Davis asserts that Mr. Davis would resist a forced sale, but she has made no levy attempts. The court is not persuaded that a debtor resistant to a forced sale creates the type of situation contemplated by the statute in which property cannot readily be attached or levied.

The statute grants to judgment creditors a remedy for reaching property of a debtor where the traditional remedies are inadequate. See *United Bank Metro v. Plains Overseas Group,* 670 S.W.2d 281 (Tex.App. 1 Dist.1983); *Steenland v. Texas Commerce Bank Nat. Ass'n,* 648 S.W.2d 387 (Tex.App. 12 Dist.1983).

---

**3.** This court was actually applying Tex.Rev.Civ. Stat. art. 3827a. That statute has been recodified without substantive change as Tex.Civ.Prac. & Rem.Code § 31.002. See Act of June 13, 1979, ch. 671, sec. 1, 1979 Tex.Gen.Laws 1555, repealed by Act of June 16, 1985, ch. 959, sec. 9(1), 1985 Tex.Gen.Laws 3242, 3222. Other cases cited in this discussion also address the earlier statute. This court will refer only to the statute as it is currently codified.

The purpose of the turnover statute is stated in the Texas House and Senate Committee Reports: The traditional methods of reaching property of a judgment debtor to satisfy a judgment have been found inadequate in cases where the judgment debtor has property outside the State of Texas, where the judgment debtor owns property interest in such items as contract rights receivable, accounts receivable, commissions receivable, and similar acts to property or rights to receive money at a future date. Additionally, there are inadequacies in existing procedures where negotiable instruments, corporate stocks, corporate securities and the like *896 are owned by the judgment debtor but secreted by the judgment debtor in such a fashion that they cannot be found for execution by a levying officer.

\* \* \* \* \* \*

[The statute] proposed to put a reasonable remedy in the hands of a diligent judgment creditor, subject to supervision of the Court, and establish procedures for reaching the types of property and property interests described above.

Judge David Hittner, "Texas Post–Judgment Turnover and Receivership Statutes," 45 Tex.Bar J. 417 (1982). The turnover statute has been used to reach corporate stock in the hands of third parties and held out of state in *Childre v. Great Southwest Life Ins. Co.,* 700 S.W.2d 284 (Tex.App. 5 Dist.1985); shares of stock and accounts receivable where the debtor refused to attend two depositions regarding his assets in *Arndt v. National Supply Co.,* 650 S.W.2d 547 (Tex.App. 14 Dist. 1983); an interest in a cause of action in *Associated Ready Mix, Inc. v. Douglas,* 843 S.W.2d 758 (Tex.App.—Waco 1992); and an interest in future rental payments in *Copher v. First State Bank of Pittsburg, Texas,* 852 S.W.2d 738 (Tex.App.—Fort Worth 1993).

Real property is generally subject to attachment or levy by ordinary legal process. Ms. Davis does not dispute that. Judge Hittner's analysis of the legislative history and the case law demonstrate that the turnover statute was created for reaching property not generally subject to attachment or levy. The potential for Mr. Davis to resist that relief does not alter the status of the property nor subject it to this supplemental means for relief. Ms. Davis has not satisfied the subsection (a)(1) requirement of § 31.002.

### Exempt Property

Subsection (a)(2) of § 31.002 requires that the property "is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." Tex.Civ.Prac. & Rem. Code § 31.002(a)(2). Under Texas law, the homestead is "exempt from attachment, execution, and forced sale for the payment of debts." Texas Property Code § 41.002(a); see Tex. Const. art. XVI § 50.

Therefore, the Texas turnover statute does not appear to be available. Ms. Davis contends however that § 522(c)(1) preempts the Texas statutory shield of the homestead from execution on a non-dischargeable family support judgment. She argues that if a debtor's failure to pay family support obligations results in a judgment under § 523(a)(5) of the Bankruptcy Code, § 522(c)(1) nullifies the state exemption.

Section 522(c)(1) provides, in pertinent part:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;

11 U.S.C. § 522(c)(1). Ms. Davis asserts that to the extent that § 522(c)(1) governs, Mr. Davis' homestead could be sold to pay the § 523(a)(5) judgment and, therefore, she has satisfied § 31.002(a)(2).

Section 522(c)(1) does not apply through Rule 69(a). The advisory committee notes to Rule 69(a) elaborates on the clause regarding the application of United States statutes. "Statutes of the United States on execution, when applicable, govern under this rule." Notes of Advisory Committee on Rules, 1937 Adoption, Note to Subdivision (a) (emphasis added). As previously dis-

cussed, § 522(c) is not a statute on execution. Furthermore, the note lists specific execution statutes that govern. While this list is not intended to be comprehensive, 11 U.S.C. § 522(c) is not included. The note recognizes that the execution procedure does not effect continued provisions of federal exemption statutes. Federal statutes may exempt property from execution but those statutes constitute governing statutes on execution only if Congress so provided.

Ms. Davis argues, however, that § 522(c)(1) preempts the exemption protection in the Texas turnover statute. The Fifth Circuit in *First Gibraltar Bank, FSB v. Morales,* recently analyzed the federal preemption *897 doctrine, recognizing that preemption is premised on a determination of congressional intent to displace the police power of the states. 19 F.3d 1032 (5th Cir. 1994). Congress must have, therefore, specifically intended that § 522(c)(1) would preempt state execution statutes' provisions regarding state exemptions. The court further recognized that when Congress legislates in a field of activity traditionally regulated by the states, the preemption analysis begins with a presumption against preemption unless that was the "clear and manifest purpose of Congress." *Id.,* at 1039 (quoting *California v. ARC Am. Corp.,* 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989)). The Supreme Court has recognized real property law as "a matter of special concern to the states." *Id.,* at 1039 (citing *Fidelity Fed. Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)). Thus, this court presumes that § 522(c)(1) does not preempt the exemption provision of the Texas turnover statute.

Ms. Davis has not rebutted that presumption. The court must look to the Bankruptcy Code to determine if Congress preempted the exemption provision of the state execution statute. Where the statutory scheme of the Code is coherent and consistent, the court generally need not inquire beyond the

statute's language. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989). The court must read § 522(c)(1) consistently with the entire section and the Code as a whole. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988).

The Code provides that, upon the commencement of a bankruptcy case, all legal and equitable interests of the debtor in property become part of the bankruptcy estate. 11 U.S.C. § 541; *Matter of Walden,* 12 F.3d 445, 448 (5th Cir.1994). A debtor may, however, exempt certain property from the estate, placing that property beyond the reach of claims of creditors. 11 U.S.C. § 522; *Walden,* 12 F.3d at 448. Once the court has declared the property exempt, it is no longer part of the bankruptcy estate.

Section 522(b) permits a debtor to exempt property under either the federal exemptions enumerated in § 522(d), if the subject state authorized, or those available under state or other federal law. Texas has authorized debtors to select the federal exemptions under § 522(b)(1). *Matter of Volpe,* 943 F.2d 1451, 1452 (5th Cir.1991). Accordingly, Mr. Davis could elect the "federal" exemptions specified in § 522(d) or the "state" exemptions under § 522(b)(2). Mr. Davis elected the "state" exemptions. Under Texas law, his homestead is exempt. Texas Property Code § 41.002(a). Thus, the homestead is no longer property of the estate.

Section 522(c)(1) provides that "property exempted under this section" is not liable for pre-petition debts of the debtor "except a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title." 11 U.S.C. § 522(c)(1).[4] Mr. Davis' debt to Ms. Davis is a debt under § 523(a)(5). Ms. Davis argues that the injunction against liability under § 522(c)(1) does not, therefore, bar execution of the judgment against the Texas homestead. She is correct in that regard. She argues further, however, that § 522(c)(1)

---

4. This case involves only § 523(a)(5) debts. Mr. Davis contends the statute must be read to refer only to property exempt by subsection 522(d). If

Congress had meant to limit the language to a subsection, it would have so provided. See *e.g.,* 11 U.S.C. § 522(b)(1).

permits execution of the § 523(a)(5) judgment against the Texas homestead.

Section 522(c) does not affect § 523(a)(5) debts. For that type of debt, § 522(c) neither creates liability nor protects exempt property from liability. Instead, § 522(c) affects all debts except those specified in subsections (c)(1), (c)(2) and (c)(3).[5] For illustrative purposes, assume Mr. Davis had debts A through Z, with Z being the § 523(a)(5) debt to Ms. Davis and the only non-dischargeable debt. Section 522(c)(1) specifies that Mr. *898 Davis' exempt property is not liable for debts A through Y. It excludes liability for debt Z from that protection. Section 522(c)(1)'s injunctive provision does not extend to liability for § 523(a)(5) judgments.

The section does not create or establish liability. It enjoins most liability imposed by non-bankruptcy law upon exempt property but does not enjoin all liability for all debts. While it does not impose an injunction against liability on exempt property for § 523(a)(1) or (a)(5) debts, it also does not prevent non-bankruptcy law from imposing such an injunction. Indeed, Texas has done so.

Had Congress intended to make exempt property liable for § 523(a)(5) family support obligations, it could have affirmatively legislated. For example, if Congress was concerned that the states have not adequately provided mechanisms for the collection of family support obligations, it could amend subsection § 522(c)(1) to read (boldface):

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case.

(1) Notwithstanding this or any other federal or state injunction of liability for exempt property, exempt property shall be liable for debts of a kind specified in section 523(a)(5) of this title.

Rather than affirmatively subjecting exempt property to liability for family support obligations, Congress did not extend the injunction against liability for family support obligations. This permits states like Texas to enact broader injunctions of liability of exempt property, protecting exempt property even from non-discharged family support obligations.

Section 522(c)(1) neither establishes nor governs any procedure for execution on property. Execution on judgments under 11 U.S.C. §§ 523(a)(1) and (a)(5) remains a matter of non-bankruptcy practice and procedure. Fed.R.Civ.P. 69. Ms. Davis may execute her family support judgment on Mr. Davis' homestead if Texas law permits. Texas law does not authorize a court-directed turnover and sale of exempt property. Under Texas homestead exemption law, the property would not be subject to the Texas turnover statute, even to satisfy Mr. Davis' conceded family support obligations. Section 522(c)(1) does not supersede or preempt the provision of the Texas turnover statute providing that a court may not employ the statute to execute on a money judgment against exempt property.

In sum, the Texas homestead ceased to be property of the bankruptcy estate when the claim of exemption became effective. The trustee could not use or sell the property. The § 522(c) bar of liability did not apply to the homestead with respect to the debtor's non-discharged family support debt under § 523(a)(5). The property, without the protection of the § 522(c) injunction, passed from the estate back to the debtor. The § 523(a)(5) creditor is left with her non-bankruptcy remedies. When Ms. Davis takes her non-discharged family support judgment to state court in Texas, the state court will not permit execution against Mr. Davis' homestead because of the Texas exemption. That she is left without a remedy against the $500,000 unencumbered asset is a matter for the Texas legislature to address.

This court must question why Texas continues to permit that broad exemption. Mr. Davis concedes that he could sell the house, pay the expenses of sale, pay his family support obligations in full and still have over $180,000 cash to invest in a house for himself

---

**5.** This discussion addresses only subsection (c)(1), not (c)(2) and (c)(3).

and his present wife. Nevertheless, Texas law permits him to shield the entire $500,000 value of the unencumbered house. Texas could provide a remedy by limiting the amount of homestead equity available for exemption by a debtor. Congress could also provide a remedy by affirmatively limiting state exemptions available under § 522(b)(2). But this court must apply the statutes as it finds them. *King Ranch, Inc. v. United States,* 946 F.2d 35, 37 (5th Cir.1991).

Based on the foregoing,

IT IS ORDERED that Ms. Davis' motion for a turnover is DENIED.

In re Thomas Cullen DAVIS and
Karen Joyce Davis, Debtors.

Thomas Cullen DAVIS, Plaintiff–Appellee,

v.

Sandra DAVIS, Defendant–Appellant.

Civ. A. No. 3:94–CV–2024–D.

Bankruptcy No. 487–41796–MT–11.

Adv. No. 394–3070.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 8, 1995.

FITZWATER, District Judge:

This appeal presents the question whether 11 U.S.C. § 522(c)(1), which provides that exempt property is liable for § 523(a)(5) debts (family support obligations), preempts Texas homestead law. The bankruptcy court held that it does not. *In re Davis,* 170 B.R. 892 (Bankr.N.D.Tex.1994). Because Texas homestead law is not preempted, the bankruptcy court's order is affirmed.

I

Defendant-appellant Sandra Davis ("Sandra") and her former husband, debtor-plain-

tiff-appellee Thomas Cullen Davis ("Cullen"), were divorced in 1968.[1] Pursuant to a property settlement, support and child custody agreement (the "Agreement"), and the divorce judgment ("Divorce Judgment"), Cullen agreed to make monthly payments to Sandra through January 1, 1991, and thereafter to pay her other sums subject to certain contingencies. In 1979 Cullen married his current wife, debtor Karen Joyce Davis ("Karen"). In 1984 they purchased certain real property that they occupy and claim as their homestead (the "Homestead").

In 1987 Cullen and Karen filed a voluntary chapter 7 petition, which was subsequently *547 converted to a chapter 11 case. They elected the exemptions under nonbankruptcy law and claimed certain property, including the Homestead, to be exempt under Texas law.

Cullen commenced an adversary proceeding against Sandra, seeking a determination that his indebtedness pursuant to the Agreement and Divorce Judgment was dischargeable. Sandra counterclaimed for a ruling that the indebtedness was nondischargeable pursuant to § 523(a)(5). In 1991 the parties settled the adversary proceeding, entering into an agreed final judgment of nondischargeability (the "Judgment") that awarded Sandra the total sum of $300,000 ($250,000 plus $50,000 in attorney's fees). The Judgment declared this sum to be nondischargeable pursuant to § 523(a)(5).

In 1993 Sandra filed the instant application for turnover order and other relief in aid of judgment. Sandra based her motion on Fed. R.Bankr.P. 7069, which in turn incorporates Fed.R.Civ.P. 69. She contended that she had been unable to collect the Judgment from Cullen, and requested that the bankruptcy court order him to turn over a warranty deed that conveyed the Homestead to her, and to turn over $29,915.00 in personal property in the event the Homestead was of inadequate value to satisfy the Judgment. Sandra argued that § 522(c)(1) rendered Cullen's otherwise exempt property liable for

---

1. Sandra was the movant in the instant application for turnover and Cullen was the respondent. For clarity, the court refers to the parties by their capacities in the original adversary proceeding and on appeal.

the Judgment because the debt was nondischargeable pursuant to § 523(a)(5).

Following a hearing, the bankruptcy court held that although Sandra held a nondischargeable judgment pursuant to § 523(a)(5), she could not execute on it against Cullen's Homestead. *Davis,* 170 B.R. at 898. Sandra argued that Rule 69(a), read in conjunction with § 522(c)(1), allowed her to execute on the Judgment. Rule 69 provides that execution shall be in accordance with Texas law, "except that any statute of the United States governs to the extent it is applicable." Section 522(c)(1) provides that exempt property remains "liable" for § 523(a)(5) family support debts. Sandra argued that § 522(c)(1) is a "statute of the United States" applicable to the Texas turnover statute, Tex.Civ.Prac. & Rem.Code Ann. § 31.002 (West 1986) (the "Turnover Statute"),[2] and thus preempts the statute's prohibition against execution on exempt property. See *Davis,* 170 B.R. at 896.

The bankruptcy court held that the Turnover Statute was unavailable to Sandra on two grounds. First, it noted that turnover is only obtainable for property that is not ordinarily subject to levy. The court reasoned that § 31.002(a)(1) and (a)(2) must be read independently. The fact that Sandra was unable to levy upon Cullen's exempt Homestead did not detract from the character of the Homestead, i.e., real property, as a type ordinarily subject to levy. *Id.* at 895–96. "The potential for Mr. Davis to resist that relief does not alter the status of the property nor subject it to this supplemental means for relief." *Id.* at 896. The bankruptcy court therefore concluded that Sandra had failed to meet the requirement for turnover in § 31.002(a)(1).

Second, the bankruptcy court noted that the Texas Turnover Statute is unavailable for exempt property and that Cullen's Homestead is exempt. *Id.* The court rejected Sandra's argument that § 522(c)(1) made the

Homestead liable for § 523(a)(5) debts and that she therefore met the requirements of § 31.002(a)(2). The court reasoned that Rule 69(a), which concerns the application of statutes on execution, could not be invoked to apply § 522(c)(1) to the Turnover Statute. *Id.* Because § 522(c)(1) is not an execution statute, the court reasoned, it did not govern.

The bankruptcy court held that § 522(c)(1) did not preempt the protection of exempt property found in the Turnover Statute. Relying on *First Gibraltar Bank, FSB v. Morales,* 19 F.3d 1032 (5th Cir.), cert. denied, —— *548 U.S. ——, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994), vacated on other grounds, 42 F.3d 895 (1995), the court determined that § 522(c)(1) would preempt the Turnover Statute only if Congress specifically intended to displace the police power of the State of Texas. *Davis,* 170 B.R. at 896–97. Moreover, on the basis that real property law was of "special concern to the states," the court held that there was a presumption against preemption. *Id.* at 897 (citing *First Gibraltar,* 19 F.3d at 1039). The court then looked to the language of the Bankruptcy Code and determined that although § 522(c)(1) did not bar execution on the Judgment, it also did not provide a mechanism for doing so. *Id.* at 897–98. Thus § 522(c)(1) did "not prevent non-bankruptcy law from imposing such an injunction" against execution. *Id.* at 898. Because Texas had enjoined execution, and § 522(c)(1) did not preempt Texas law, Sandra could not compel the turnover of Cullen's Homestead. *Id.* Sandra appeals.

## II

Sandra contends the order denying her turnover application must be reversed because § 522(c)(1) inferentially preempts Texas law either by the pervasive scheme of bankruptcy legislation or by an actual conflict between state and federal law in this area.

---

**2.** The Texas Turnover Statute provides, in pertinent part: (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, in-

cluding present or future rights to property, that: (1) cannot readily be attached or levied on by ordinary legal process; and (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. Tex.Civ.Prac. & Rem. Code Ann. § 31.002 (West 1986).

## A

Acting within the authority granted it by the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, Congress may enact legislation that preempts state law. *California v. ARC Am. Corp.,* 490 U.S. 93, 100, 109 S.Ct. 1661, 1664, 104 L.Ed.2d 86 (1989). Preemption is most easily recognized when Congress displaces state law "by so stating in express terms," *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), but may also be "implicitly contained in its structure and purpose," *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). The key inquiry in both instances is whether Congress intended that federal law supersede state law. See *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986). Courts inquiring whether a federal statute preempts state law must begin their analysis from the presumption that the police powers of the states are not to be disturbed unless this is the "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); see *First Gibraltar,* 19 F.3d at 1039.

Preemption may be implied where federal and state law conflict. Such a conflict exists when compliance with both federal and state law is a physical impossibility, or where state law obstructs "accomplishment and execution of the full purposes and objectives of Congress," *Pacific Gas,* 461 U.S. at 204, 103 S.Ct. at 1722. In addition, preemption may be implied where "a scheme of federal legislation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *First Gibraltar,* 19 F.3d at 1039 (quoting *Pacific Gas,* 461 U.S. at 204, 103 S.Ct. at 1722).

To determine whether Texas homestead law is preempted in the present case, the court must consider the intent of Congress manifested in the language of the Bankruptcy Code, as well as the police power of the State of Texas with respect to homestead protections.

Section 522(c)(1) of the Bankruptcy Code provides:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case except—a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title[.]

The exempt property that may be held liable pursuant to § 522(c)(1) includes Cullen's Homestead. The question presented is whether Texas homestead law interferes with the pervasive scheme in bankruptcy established by Congress, or conflicts with the terms of § 522(c)(1).

Texas laws protecting the homestead are expansive and deeply rooted. Cf. *Zwernemann v. Von Rosenburg,* 76 Tex. 522, 13 S.W. 485, 487 (1890). Homestead rights have long been zealously guarded, and they trace back to Texas' days as a republic, prior to admission into the Union. See Act of Jan. 26, 1839, 1839 Laws of Rep. of Tex. 1236. They "are not only based upon a tender regard for the welfare of the citizen, but have for their object the stability and welfare of the state." *Andrews v. Security Nat'l Bank,* 121 Tex. 409, 50 S.W.2d 253, 256 (1932). "The homestead exemption was founded on principles of soundest policy.... Its design was not only to protect citizens and their families from destitution, but also cherish and support in bosoms of individuals, those feelings of sublime independence which are so essential to maintenance of free institutions," *Franklin v. Coffee,* 18 Tex. 413, 417 (1857). Article XVI, § 50 of the Texas Constitution provides that no homestead can be the subject of a forced sale for payment of any debts other than purchase money debts, taxes, and mechanics liens. Tex. Const.Ann. art. XVI, § 50 (West 1993). The universal rule of construction is that the Texas homestead law is to be liberally construed to accomplish its objectives. See *In re Henderson,* 168 B.R. 151, 157 (W.D.Tex. 1993), aff'd, 18 F.3d 1305 (5th Cir.)(per curiam), cert. denied, —— U.S. ——, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994). Homestead

protections will not be lightly disturbed. See *In re Moody,* 77 B.R. 566, 578 (S.D.Tex. 1987), aff'd, 862 F.2d 1194 (5th Cir.1989), cert. denied, 503 U.S. 960, 112 S.Ct. 1562, 118 L.Ed.2d 209 (1992).

**B**

The court first considers whether § 522(c)(1) preempts the Texas homestead law pursuant to a pervasive scheme.

It is clear that under Texas law, Sandra would not be able to force the sale of Cullen's Homestead to collect sums owed pursuant to the Agreement and Divorce Judgment. *Eggemeyer v. Eggemeyer,* 623 S.W.2d 462, 466 (Tex.App.1981, writ dism'd w.o.j.)(holding homestead not subject to forced sale to secure payment of accrued child support because child support judgment does not fall within three categories of debt collectible from homestead specified in Texas Constitution). Sandra asks this court to hold that, in exchange for the protections of bankruptcy, a Texas debtor exposes to liquidation a homestead that, under any other set of circumstances, would be immune from execution.

The Bankruptcy Code does not support this result. Congress presumably understood, when it provided debtors with the option to elect state exemptions, that the broad protections of state law would apply. By allowing state exemptions under § 522(b), Congress contemplated that the exemptions available to debtors in the several states would not be uniform. There is therefore no "pervasive scheme" in the Bankruptcy Code with respect to exempt property. Sandra contends that "in the absence of a clear statement of intent to the contrary, Congress should be presumed to have intended the bankruptcy laws to apply uniformly across the states." Given the express relinquishment of uniformity in § 522(b), and the presumption against preemption when there is no clear and manifest congressional purpose, the court cannot agree.

Sandra is correct that § 522(c) covers all types of exempt property, whether claimed under the federal or state exemptions. As the court points out infra at § II(C), however, § 522(c) does not conflict with Texas law. The Turnover Statute's protection of exempt property does not therefore impose upon the exemption scheme set out in § 522. To the contrary, § 522 expressly provides that state-law exemptions apply under the Code.

In addition, the history of § 522 supports the proposition that preemption may not be inferred. When Congress revised the Code to permit states to opt out of the federal exemptions, it delegated to the states precisely the authority Sandra contends is preempted—the power to designate which assets will be excluded from the bankruptcy estate. Originally, Congress contemplated providing a uniform and exclusive exemption provision to be applied to all bankruptcy cases, but rejected this proposal in favor of the regimen now in place. See Report of the Comm'n on the Bankruptcy *550 Laws of the United States, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., pts. I & II, at 4–503 (1973). In doing so, Congress allowed the states to prescribe the nature and extent of exemptions that might be used in bankruptcy—a significant delegation of authority.[3] See *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991)("Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all."). Because Congress has delegated this authority, this court must give deference to state law, and find that preemption applies only when there is a clear and specific conflict between Code provisions and state exemption laws. See *In re Stone,* 119 B.R. 222, 233 (Bankr.E.D.Wash.1990)(holding that even in exemption area, states cannot enact legislation in conflict with specific provisions of Bankruptcy Code).

**3.** The debtor may opt to exempt property either under the exemptions provided in § 522(d), or under the exemptions provided by state and non-bankruptcy law. The debtor selects either of these options in its entirety, and cannot pick and choose items from both of the lists. *In re Stone,* 119 B.R. 222, 230 (Bank.E.D.Wash.1990).

## C

The court next addresses whether Texas homestead law and § 522(c)(1) are in actual conflict.

Section 522(c)(1) provides that exempt property cannot be liable for most prepetition debts. It also specifies certain debts for which exempt property can be liable. It is silent, however, regarding how a creditor might execute a judgment on exempt property that can be held liable. The holder of a judgment for family support obligations can collect from exempt property if the creditor has a means of execution. For execution on the Judgment, Sandra must rely on state law—in this case the Texas Turnover Statute—which applies through Rule 69.

The court rejects the assertion that Texas homestead law conflicts with this reading of § 522(c)(1) because Sandra still cannot collect from Cullen's Homestead. Sandra can impose liability on the Homestead, regardless of its exempt status. Under Texas law, a creditor may record and index an abstract of judgment in the county where property is located in order to perfect a judgment lien against the property. See Tex.Prop.Code Ann. § 52.001 (West 1995). This lien will attach even on homestead property. *Henderson,* 18 F.3d at 1309. In *Henderson* the court held, contrary to several Texas cases, that "a judicial lien in Texas does fasten a liability on the homestead" for purposes of determining whether a debtor can rely on § 522(f) of the Code to avoid it. *Id.* at 1309. "The debtor's homestead is not exempt from the perfected lien; rather, the homestead is exempt from any seizure attempting to enforce the perfected lien." *Exocet Inc. v. Cordes,* 815 S.W.2d 350, 352 (Tex.App.1991, no writ). Therefore under Texas property law, a homestead remains liable for debts of the type specified in §§ 523(a)(1) and 523(a)(5) of the Code because liens may be perfected against the property.

This is all that § 522(c)(1) requires. The function of § 522(c)(1) is to ensure that certain liens on exempt property remain in force. It therefore serves to modify § 522(f)(1) of the Code, which provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—a judicial lien[.]

In the absence of § 522(c)(1), a debtor could invoke the protections of § 522(f) to avoid the fixing of a lien on his exempt property for family support obligations. This is so because a debtor electing state exemptions is entitled to invoke the lien avoidance protections of § 522(f) even where state law defines exempt property in a manner that it is not encumbered by preexisting liens. See *Owen,* 500 U.S. at 313, 111 S.Ct. at 1838. Courts applying Owen have concluded that state law governs what property will be exempt, but that the effect of liens on that state-defined exempt property is a matter of federal law. *551 Cf. *In re Conyers,* 129 B.R. 470, 472 (Bankr.E.D.Ky.1991).

Sandra relies on several cases that actually support this court's reading of § 522(c)(1). In *In re Citrone,* 159 B.R. 144 (Bankr. S.D.N.Y.1993), the court held that a debtor's ability to avoid judicial liens that impair state exemptions does not extend to debts specified in § 522(c). The debtor could not therefore use § 522(f) to avoid two judgment liens for child and spousal support. *Id.* at 146 (holding debts of type specified in § 522(c)(1) "are not dischargeable under 11 U.S.C. § 523(a)(5) and thus may not be avoided under 11 U.S.C. § 522(f)"). By stating that exempt property remains liable for § 523(a)(1) and § 523(a)(5) debts, § 522(c)(1) serves to limit the scope of § 522(f)—not the scope of state exemptions.

Similarly, *Conyers* held that, even though the Kentucky homestead exemption did not apply to debts or liabilities existing prior to purchase of the property, § 522(f) would allow the debtor to avoid such liens because, absent the liens, the homestead would be exempt under state law. In reaching this conclusion, the court looked to § 522(c)(1) and determined that "the types of debts that remain collectible after bankruptcy from ex-

empt property is controlled by federal rather than state law." *Conyers,* 129 B.R. at 472. The court's holding stands only for the proposition that state exemption law should not affect otherwise valid liens; the perfection of liens is governed by federal law as embodied in § 522.

Sandra asserts that "Section 522(c)(1) not only prevents general creditors from reaching the debtor's exempt property to satisfy their claims (whether the debtor asserts federal or state exemptions), but also allows two special types of claims to be satisfied out of property that would otherwise be exempt." This argument extends the reach of this section too far. The holdings in *Citrone* and *Conyers* do not make § 522(c)(1) an execution statute. When the *Conyers* court stated that §§ 522(c)(1), 523, and 524 would conflict with a reading of § 522(b) that empowers states to "permit or deny collection of certain claims from exempt property after bankruptcy whether or not such claims are dischargeable in bankruptcy," *Conyers,* 129 B.R. at 472 (emphasis added), it was concerned about state exemption law altering the federal characterization of debts as collectible from either estate assets or assets outside of the bankruptcy estate (both exempt property and post-bankruptcy earnings). State exemption law must conform to the federal determinations of which debts survive bankruptcy. The mechanism by which those debts are collected, however, remains a matter of state law.

That § 522(c)(1) is not an exemption statute becomes clear when § 522(c) is read as a whole. See *United Savs. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988)(noting that statutory construction is holistic endeavor). Section 522(c)(2) allows exempt property to be held liable for certain debts already secured by a lien. If § 522(c) were an execution statute, it would have no cause to rely on existing liens to have effect. That liability as to § 523(a)(1) and § 523(a)(5) debts is not defined by pre-existing liens does not change the defining—as opposed to executory—nature of § 522(c). Rather, it suggests that for these debts a lien

or other means of executing on the judgment need not precede the claiming of exemptions. The creditor, after the debtor has declared bankruptcy and claimed exemptions pursuant to § 522(b), may still pursue these debts by whatever means are available, i.e., state-law remedies for execution on a judgment.

The remaining cases that Sandra cites involve attempts by debtors to avoid liens on their exempt property. In each case, non-bankruptcy law provided the creditor with a means to execute on the judgment. None of the cases suggests that § 522(c)(1) provides the mechanism for doing so. Rather, § 522(c)(1) prevents debtors from avoiding already-obtained liens for alimony, child support, and tax claims. See, e.g., *In re Meadows,* 75 B.R. 695, 698–99 (Bankr.N.D.Tex.1987)(denying debtor's claim of exemption for workers' compensation settlement where divorce agreement provided that half of settlement proceeds would go to minor daughter, and Tex.Fam.Code Ann. *552 § 14.05 (West 1986) permitted Texas courts to provide for child's support from any resources available).

Texas homestead law does not bar the perfecting of a lien on homestead property. Accordingly, it does not conflict with the mandate of § 522(c)(1), which imposes a limitation on the lien-avoidance provisions of § 522(f).

\* \* \* \* \* \*

Section 522(c)(1) does not preempt Texas homestead law. Accordingly, Sandra's ability to collect the Judgment is determined according to the terms of the Texas Turnover Statute. Because this statute prohibits recovery from exempt property, and Cullen's Homestead is exempt under Texas law, Sandra may not invoke the Turnover Statute to force conveyance of the Homestead. The bankruptcy court's order denying Sandra's motion for a turnover is therefore

AFFIRMED.