**In re RICHARDSON, Mary and Richardson, Bradley, Debtors.**

**Bankruptcy No. 98–01571–R.**

United States Bankruptcy Court, N.D. Oklahoma.

Sept. 1, 1998.

Kathryn Ross, Miami, OK, for Debtors.

Daniel Webb, Work & Lentz, Tulsa, OK, for Creditor.

### ORDER GRANTING MOTION TO AVOID JUDICIAL LIEN ON EXEMPT PROPERTY UNDER SECTION 522(f)

DANA L. RASURE, Chief Judge.

On April 30, 1998, the Debtors, Mary Richardson and Bradley Richardson (the "Richardsons"), filed their Motion to Avoid Judicial Lien in [sic] Exempt Property Under Section 522(f) by Healthcare Collections, Inc. (the "Motion to Avoid Lien"). On May 5, 1998, judicial lien creditor Healthcare Collections, Inc. ("Healthcare") filed its Objection to Motion to Avoid Judgment Lien (the "Objection") containing a brief in support of its objection. On May 7, 1998, the Richardsons filed an amended motion, and on May 15, 1998, the Richardsons filed Debtor's [sic] Responsive Brief to Objection to Motion to Avoid Judgment Lien. A hearing on the Motion to Avoid Lien and the Objection was held on July 1, 1998. The parties stipulated to the operative facts, and oral argument was presented by Kathryn Ross, counsel for the Richardsons, and Daniel Webb, counsel for Healthcare, whereupon the Court took the matter under advisement. The Court, being fully advised, makes the following findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

### Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334 and 157(b)(2)(B).

### Findings of Fact

In May 1993, Healthcare obtained a judgment in the amount of $3,878.65 against Bradley Richardson. Healthcare recorded an Affidavit of Judgment with the County Clerk of Ottawa County, Oklahoma, for the purpose of obtaining a judgment lien on all real estate owned by Mr. Richardson located in Ottawa County. In April 1998, Healthcare recorded a Notice of Renewal of Judgment, pursuant to 12 O.S. Supp.1997, § 735, in order to continue its lien. The Richardsons' residence is located in Ottawa County. The Richardsons have claimed the residence as exempt property on their bankruptcy schedules, and there is no dispute as to the homestead character of the property.

The Richardsons contend that the lien of Healthcare impairs their homestead exemption and should be avoided pursuant to 11 U.S.C. § 522(f). Healthcare contends that its lien does not impair the Richardsons' homestead exemption because Healthcare cannot execute on its lien and force the sale of the homestead so long as the property remains the homestead of the Richardsons; Healthcare contends that since it cannot realize on its lien until the property ceases to be homestead, the homestead exemption is not impaired. The Richardsons counter that the lien impairs the full enjoyment of the homestead because the lien impairs their ability to use the equity in the home and to pass the home on to their dependents upon death.

### Conclusions of Law

#### Section 706 of Title 12 of the Oklahoma Statutes

This case presents the Court with its first opportunity to consider the effect of the recent amendment to Oklahoma law that permits judgment liens to attach to homestead. Prior to November 1, 1997, Section 706 of Title 12 of the Oklahoma Statutes provided that filing a statement of judgment in the records of the county clerk impressed all real

estate of the judgment debtors located in such county with a lien in the amount of the unpaid judgment. *See* 12 O.S.1991, § 706. However, Oklahoma courts have consistently held that a judgment lien created under Section 706 did not attach to homestead of the judgment debtor, in light of the exemption from forced sale granted to homestead property under Article XII, Sections 1 and 2 of the Oklahoma Constitution, and Sections 1, 2 and 5 of Title 31 of the Oklahoma Statutes. *See Sooner Federal Sav. & Loan Ass'n v. Mobley,* 645 P.2d 1000 (Okla.1981); *Kelough v. Neff,* 382 P.2d 135 (Okla.1963).

The Oklahoma legislature amended Section 706 so that as of November 1, 1997, Section 706 provides as follows:

> A lien created pursuant to this section shall affect and *attach to* all real property, *including the homestead,* of the judgment debtors whose names appear in the statement of judgment; however, judgment liens on a homestead are exempt from forced sale pursuant to Section 1 of Title 31 of the Oklahoma Statutes and Section 2 of Article XII of the Oklahoma Constitution.

12 O.S. Supp.1997, § 706(B)(2)(emphasis added).

Prior to the amendment, it was not necessary for a debtor to file a motion under Section 522(f) of the Bankruptcy Code ("Section 522(f)") to avoid a judgment lien on exempt homestead property because under applicable Oklahoma case law, judicial liens simply *did not attach* to a homestead—there was no lien to avoid. *See, e.g., David Dorsey Distributing, Inc. v. Sanders (In re Sanders),* 39 F.3d 258, 262 (10th Cir.1994) ("[W]hen state law does not allow a lien to attach to exempt property, § 522(f) is superfluous and without application").

▄▄▄ Since November 1, 1997, however, a properly filed judgment lien encumbers homestead property. The protection against claims by judgment creditors afforded by the Oklahoma legislature and the Oklahoma Constitution now consists solely of the prohibi-

tion of a forced sale of the property. Judgment liens now attach to homestead property so that in the event that the property no longer qualifies as a debtor's homestead, the judgment lien creditor may immediately execute and satisfy its judgment. Another possible effect of the amendment is that a judgment lien creditor may now establish priority over later consensual creditors. As a result, an Oklahoma debtor in bankruptcy now has an incentive to avoid a judgment lien against homestead property under Section 522(f), and bankruptcy courts in Oklahoma are compelled to wrestle with the interplay among Section 522(f), the Oklahoma homestead exemption, and amended Section 706.

Section 522(f) permits a debtor to—

> avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ... *a judicial lien* [unless such judicial lien is associated with certain domestic relations support orders].

11 U.S.C. § 522(f)(1)(A) (emphasis added).

▄▄▄ Subsection (b) of Section 522 allows a debtor to exempt from the bankruptcy estate certain property. An individual debtor may choose (1) the exemptions set forth in Section 522(d) of the Bankruptcy Code (the "Federal Exemptions") or (2) the exemptions under the law of the state in which the debtor resides and exemptions under federal non-bankruptcy law (the "State Exemptions") unless state law does not authorize a debtor to take advantage of the Federal Exemptions, in which case, the debtor is limited to the State Exemptions. 11 U.S.C. § 522(b)(1). Oklahoma law specifically prohibits an Oklahoma resident from selecting the Federal Exemptions. *See* 31 O.S.1991, § 1(B).

The Richardsons have claimed their homestead exempt under Oklahoma law and desire to avoid Healthcare's judgment lien on the homestead.[1] Healthcare urges this Court to adopt the holding of Bankruptcy

---

1. The parties stipulate that Healthcare properly perfected and continued its lien according to Oklahoma law.

Judge Richard L. Bohanan, sitting in the Western District of Oklahoma, who has examined this precise issue in the case of *In re McKinney–Jones*, 219 B.R. 619 (Bankr. W.D.Okla.1998). In *McKinney–Jones*, the Court concluded that because the amended Section 706 provides that a judgment lien cannot be foreclosed by a sale of homestead property, a debtor's homestead is not *impaired* by the judgment lien. *Id.* at 622. The Court focuses upon the purpose the homestead exemption is designed to serve— that is, to "shelter [a debtor] from the elements"—and determines that such purpose is not undermined by the continued existence of a non-executable judgment lien. *Id.* at 621. Because the debtor could not be involuntarily or forcibly dispossessed of her home by the judgment lien creditor, her exemption was not impaired. *Id.* The homestead exemption, as bestowed by Oklahoma law, is therefore not absolute, but is narrowed and qualified by amended Section 706, as well as other statutes that permit certain liens on homestead.

This Court finds Judge Bohanan's analysis instinctive and compelling. It would seem that the homestead exemption granted by state law should be only as broad in bankruptcy proceedings as state law permits. However, the United States Supreme Court and various Circuit Courts of Appeal have restricted the effect of state law limitations on State Exemptions for the purpose of lien avoidance in bankruptcy.[2]

**Pre-emption**

"Impairment of an exemption" is a concept embodied in Section 522(f) of the Bankruptcy Code, and therefore its meaning is determined by analyzing the policies underlying bankruptcy law rather than state exemption law. The United States Supreme Court addressed the role of state law in defining exemptions for the purpose of Section 522(f)'s avoidance scheme in the case of *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

In *Owen*, the Supreme Court held that a judicial lien on property claimed exempt under a state law exemption scheme may be avoided under Section 522(f), even if state law limits the circumstances under which the property may be exempt. In *Owen*, a Florida debtor sought to avoid his ex-wife's judicial lien on a condominium that became exempt property *after* the lien had already attached to the property. Florida law was clear that a judicial lien that attaches to property *before* it qualifies as exempt property continues in the property, notwithstanding the later claim of exemption. "Pre-existing liens, then, are in effect an exception to the Florida homestead exemption." *Id.* at 307, 111 S.Ct. at ——.

Instinctively, it would seem that a debtor's State Exemptions should be only as protective as the state's laws provide—that the scope of a State Exemption, and exceptions or limitations to such an exemption, should be defined by the state. For instance, it would seem that a debtor choosing (or forced to choose) a State Exemption would obtain the exemption burdened by all its exceptions and limitations, such as the exception that pre-existing judgment liens are not affected by the homestead exemption. In *Owen*, the Supreme Court acknowledged that the lienholder's view– that the Florida homestead

---

2. Further, some other bankruptcy courts that have had an opportunity to ponder the "impairment" issue in the context of homestead exemption laws in other states have arrived at conclusions contrary to *McKinney–Jones*. In *In re Watson*, 116 B.R. 837 (Bankr.M.D.Fla.1990), the Court held that a judgment lien impaired a debtor's state law homestead exemption, even though under state law, the lien was unenforceable so long as the property remained homestead. The Court found that the mere existence of the lien impaired the homestead because it constituted a cloud on the title to the homestead and "any potential enforcement of a judgment lien in the future is a present impairment of the exemption." *Id.* at 838–39. *See also Henderson v.* *Belknap (In re Henderson)*, 168 B.R. 151 (W.D.Tex.1993), aff'd, 18 F.3d 1305, *cert. denied*, 513 U.S. 1014, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994) (even where state law provides that a judicial lien does not attach to homestead, it creates a cloud on the title, may lead to litigation, prevent a closing, preclude title insurance, "or otherwise impair or impede a debtor's right to deal with his real property in a free and unfettered manner," and therefore may be avoided as "impairing" the homestead exemption (internal citations omitted)); *In re Kellar*, 204 B.R. 22 (Bankr.E.D.Ark.1996)(judicial lien impaired homestead exemption because debtors were unable to obtain a second mortgage due to the existence of the lien).

exemption simply was not assertable against pre-existing judicial liens—was "entirely reasonable." *Id.* at 309–10, 111 S.Ct. at ——. However, the Court held that the proper inquiry was "not whether the lien impairs an exemption to which the debtor is *in fact* entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself." *Id.* at 310–11, 111 S.Ct. at —— (emphasis added).[3] The Supreme Court concluded that "Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision." *Id.* at 313–14, 111 S.Ct. at ——.

■ The result in *Owen* is consistent with the underlying purpose of lien avoidance and illustrates the supremacy of federal law over state law in the field of bankruptcy. By virtue of Section 522(f), federal law clearly describes the *types of liens* that may be stripped from property necessary for the debtor's fresh start. *See* 11 U.S.C. § 522(f)(1). Federal law authorizes states to determine the *type of property* its residents should be able to retain for their minimal needs and authorizes states to prohibit its residents from taking advantage of the Federal Exemptions. *See* 11 U.S.C. § 522(b). While federal law permits states to select the property that is exemptible, federal law exclusively governs the field of lien avoidance, thereby pre-empting any state law that limits

the scope of its exemptions in a way that would interfere with the "fresh start" policy served by the avoidance of certain types of liens—liens which Congress has determined should not appropriately survive bankruptcy. *See e.g., Bruin Portfolio, LLC v. Leicht (In re Leicht),* 222 B.R. 670 (1st Cir. BAP 1998); *Davis v. Davis (In re Davis),* 105 F.3d 1017, 1022 (5th Cir.1997), *rehearing en banc granted and pending* ("The power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount.... Consequently, states may not pass or enforce laws to interfere with or complement the Bankruptcy Code or to provide additional or auxiliary regulations" (internal citations omitted)); *Tower Loan of Mississippi, Inc. v. Maddox (In re Maddox),* 15 F.3d 1347 (5th Cir. 1994);[4] *Aetna Finance Co. v. Leonard (In re Leonard),* 866 F.2d 335, 336 (10th Cir.1989).

Congress, therefore, has determined that *judicial liens* that have attached to any property that a debtor claims as exempt may be avoided. Congress was capable of making exceptions to its judicial lien avoidance policy, as the lien avoidance statute provides that judicial liens that secure the performance of certain domestic relations orders are *not* avoidable, *see* 11 U.S.C. § 522(f)(1), but Congress did not create an exception that would allow states the right to legislate around Section 522's lien avoidance mechanism.[5]

---

3. The Court emphasized that the phrase contained in Section 522(f)–"to the extent that such lien impairs an exemption to which the debtor *would have been entitled*"—can only be given meaning by interpreting it in this way. *Owen,* 500 U.S. 305, 111 S.Ct. at 1837; *see also Aetna Finance Co. v. Leonard (In re Leonard),* 866 F.2d 335, 336–37 (10th Cir.1989) ("The debtor's right to claim avoidance of a lien on property under § 522(f) is determined by considering whether the property, *if unencumbered,* is exempted under the state statutory exemptions.")

4. In the *Tower Loan* case, the Fifth Circuit Court of Appeals overruled its decision in *In re McManus,* 681 F.2d 353 (5th Cir.1982) in light of *Owen.* In *McManus,* the Court had concluded that a debtor's state exemptions were burdened with all its exceptions, that the debtor " 'took the bitter with the sweet' when he used the Louisiana exemption statute as the basis of avoiding liens under § 522(f)," and "thus, a debtor could not use § 522(f) to avoid a lien on exempt property when that lien fell within an exception to

that exemption under state law." *Tower Loan,* 15 F.3d at 1350. The *McManus* analysis, which the Fifth Circuit renounced in light of the United States Supreme Court precedent set forth in *Owen,* is the analysis that Healthcare urges this Court to adopt in this case.

5. *See, e.g.,* Tex. Prop.Code Ann. §§ 42.001–002 (Vernon Supp.1998) (validly encumbered property is excluded from the definition of exempt property). This statute would nullify lien avoidance in every case, since a valid lien on property renders the property not exempt under Texas law; therefore its limitation is not applicable in bankruptcy proceedings. *See In re Kelly,* 133 B.R. 811 (Bankr.N.D.Tex.1991). *See also Leonard,* 866 F.2d at 337 (Colorado exemption statute and Section 522(f) could not be interpreted to mean that only the debtor's *equity* in property is exempt; that would lead to an absurd result and nullify the lien avoidance provision because by definition, equity is the unencumbered portion of the property-there can be no lien on equity to avoid).

Congress has also made the policy decision to permit a debtor to strip *nonpossessory, non-purchase-money security interests* from property that satisfies two criteria: (1) the property is exempt under the exemption scheme elected by the debtor (*i.e.*, under Section 522(d) if the debtor elected Federal Exemptions, or under state law if the debtor elected State Exemptions); and (2) the property falls within one of the categories of set forth in Section 522(f)(B)---that is, household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry held for personal, family or household use; implements, books or tools of the trade; and prescribed health care aids. 11 U.S.C. § 522(f)(1)(B). Those two types of liens, judicial liens and nonpossessory, nonpurchase-money security interests, would be an obstacle to a debtor's financial rehabilitation if they were not removed from a debtor's exempt property. Congress has determined that a debtor should be able to emerge from bankruptcy free of such encumbrances on his or her exempt property, notwithstanding that the law of the debtor's state condones the attachment of such liens to exempt property. *See Tower Loan of Mississippi, Inc. v. Maddox (In re Maddox)*, 15 F.3d 1347, 1354 n. 50 (5th Cir.1994) ("Of particular note to Congress was the technique of acquiring an overly broad security interest in all of a consumer's household and personal goods, a technique that often prevented the debtor from gaining the 'fresh start' from bankruptcy desired by Congress. *See* H.R.Rep. No. 95–595 at 117, reprinted in 5 U.S.C.C.A.N. 5787, 6077 (1978)."); *In re Leonard*, 866 F.2d 335, 337 (10th Cir.1989); *In re Kelly*, 133 B.R. 811, 813 (Bankr. N.D.Tex.1991).

While Section 522(f) holds certain liens in disfavor, bankruptcy law and policy also *favors* certain liens, permitting them to survive bankruptcy, even as against exempt property. Section 522(c) provides that "property exempted under [Section 522] is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case" except for certain tax liens, child support liens, liens that are not avoided by virtue of the many sections of the Bankruptcy Code permitting the avoidance of

liens, and liens securing debts owed to the federal regulatory agencies arising from defalcation by financial institution officers, directors and affiliates. 11 U.S.C. § 522(c). Through the Bankruptcy Code, Congress has created a unified scheme of prioritizing a debtor's liabilities, including liens securing those liabilities, according to a consensus as to the societal and commercial value attached to the repayment of such liabilities, with the ultimate goal of reintegrating a debtor back into financial society with his or her essential property intact and debts under control. The purpose of lien avoidance would not be served if states were able to craft legislation that resulted in the survival of the offending liens.

Stated simply, the general rule has been that state law defines the type of property that may be claimed exempt in bankruptcy proceedings, and bankruptcy law defines the types of liens on the exempt property that may be avoided, notwithstanding state law that purports to except those liens from the exemption.

To test the validity of this rule in this jurisdiction, the Court has examined its effect on three other circumstances in which Oklahoma law makes exceptions from its laws exempting property from forced sale: (1) the exception for mortgages, tax liens and materialmens' liens on homestead property; (2) the exception for pre-existing judgment liens on homestead property; and (3) the exception for Article 9 security interests on exempt personal property.

For instance, Oklahoma law provides that the homestead exemption "shall not apply where the debt is due [f]or purchase money of such homestead or a part of such purchase money[;][f]or taxes or other legal assessments due thereon[; or for] work and material used in constructing improvements thereon." 31 O.S.1991, § 5 (hereinafter "Section 5 Liens"). If "built-in limitations" on state exemptions are inapplicable in a bankruptcy context, why are mortgages, tax liens and materialmens' liens not avoidable? Section 5 Liens, like the judicial liens that attach to homestead under Section 706, are exceptions to, or limitations on the protection

of the homestead exemption. Section 5 Liens clearly impair the exemption–they can be foreclosed and the debtor can be dispossessed of his or her homestead. The effectiveness of Section 5 Liens is not pre-empted by the Bankruptcy Code, however, because the liens do not fall within the categories of liens on exempt property that Congress has declared are not worthy of surviving the bankruptcy, that is, judicial liens and nonpossessory, nonpurchase-money security interests. Therefore, Section 5 Liens are not avoidable under Section 522(f).[6] Again, although the type of property that may be claimed exempt in bankruptcy proceedings is defined by state law, the type of liens that are avoidable is strictly a matter of bankruptcy policy.

Further, similar to the limitation to homestead under Florida law cited in *Owen,* Oklahoma common law subscribes to the doctrine that judicial liens that have attached to non-homestead property are not divested by the subsequent occupation of the property as homestead. *See, e.g., Harris v. Cherokee State Bank,* 82 Okla. 151, 198 P. 878 (1921); *Northwest Thresher Co. v. McCarroll,* 30 Okla. 25, 118 P. 352 (1911). Because it is a judicial lien, one of the liens disfavored under federal law, its merit and significance enjoyed under state law is pre-empted by bankruptcy policy. Therefore, under the rule applied in this case, such a pre-existing judgment lien on homestead would be avoidable.

Finally, Oklahoma law allows holders of nonpossessory, nonpurchase-money security interests to attach exempt property and subject such property to execution and forced sale for the payment of the underlying debt. Section 9–501, *et seq.,* of Title 12A of the Oklahoma Statutes (Oklahoma's adoption of the Uniform Commercial Code (the "UCC")) governs the foreclosure of security interests in personal property. Nothing in the UCC or in the exemption statutes prevents a debtor from voluntarily encumbering exempt property. Notwithstanding that Oklahoma

law tacitly excepts from the protection of the exemption statute a forced sale under the UCC,[7] the Bankruptcy Code clearly permits the avoidance of such a non-purchase money lien on certain exempt property. *See* 11 U.S.C. § 522(f)(1)(B). Again, the supremacy of federal law and bankruptcy policy over substantive state law is illustrated, with the Bankruptcy Code sanctioning the cancellation of the disfavored lien–this time a voluntary lien.

### The 1994 Amendments

In light of the confusion that the concept "impairment of exemption" has generated in connection with lien avoidance, caused in part by the wide diversity of state exemption laws, Congress attempted to clarify its intended meaning by amending Section 522(f) in the Bankruptcy Reform Act of 1994 ("1994 Amendments"). The legislative history of the 1994 Amendments indicates that Congress intended to overrule decisions that misinterpreted its intent as to the meaning of Section 522(f) by imposing a formula to determine whether liens are avoidable, which is codified at 11 U.S.C. § 522(f)(2) as follows:

(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of–
(i) the lien;
(ii) all other liens on the property; and
(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

(C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

11 U.S.C. § 522(f)(2).

The amendment appears to apply to situations where the *amount or extent* of the

---

6. Such liens might be avoidable under some other section of the Bankruptcy Code, however. *See* 11 U.S.C. §§ 506(d), 544, 545, 547, 548, 549, and 724(a).

7. Oklahoma law defines exempt property to be "exempt from attachment or execution and every other species of forced sale for the payment of debts." 31 O.S.1991, § 1(A).

impairment is at issue---for example, where the exemption for tools of the trade is limited to $5,000, or the exemption for vehicles is limited to $3,000. The legislative history, however, indicates that the decisions this amendment was intended to overrule involved several scenarios, including (1) where the debtor's property is fully encumbered by consensual mortgages (if the debtor has no equity, is the exemption impaired by a subsequent judicial lien?); (2) where the judicial lien the debtor seeks to avoid is only partially secured (how much of the lien may be avoided?); (3) where state law provides that the homestead exemption only applies if there is a pending execution (if there is no pending execution at the time of the bankruptcy, does the debtor have an exemption to claim?); and (4) where a judicial lien is senior to a consensual mortgage, and the lien plus mortgage exceeds the value of the property. *See* Legislative History—Pub. L. No. 103–394, H.R. 5611, Floor Statements, 140 Cong. Rec. H. 10,764 (daily ed. Oct. 4, 1994), *reprinted in* LAWRENCE P. KING, COLLIER ON BANKRUPTCY, App. E, App. Pt. 9(b), p. 9–93—9–94 (15th ed.1998).

◼ The issue as to whether "built-in" exceptions to state law exemptions should be given effect is embodied in the *third situation* articulated by Congress. The Floor Statement indicates that the formula set forth in Section 522(f)(2) is to be employed in such circumstances, resulting in the extinction of the built-in exceptions. The Floor Statement explains:

> [T]he Court of Appeals, in *In re Dixon*, 885 F.2d 327 (6th Cir.1989), has ruled that the Ohio homestead exemption only applies in execution sale situations. Thus, the court ruled that the debtor's exemption was never impaired in a bankruptcy and could never be avoided, totally eliminating the right to avoid liens. This leaves the debtor in the situation where, if he or she wishes to sell the house after bankruptcy, that can be done only by paying the lienholder out of equity that should have been protected as exempt property. By focusing on the dollar amount of the exemption and defining "impaired," the amendment

also clarifies that a judicial lien on a property can impair an exemption even if the lien cannot be enforced through an execution sale, thereby supporting the result in *In re Henderson*, 18 F.3d 1305 (5th Cir. 1994), which permitted a debtor to avoid a lien that impaired the homestead exemption even though the lien could not be enforced through a judicial sale.

*Id.* See also *Holland v. Star Bank, N.A. (In re Holland)*, 151 F.3d 547 (6th Cir.1998). It appears, then, that whether a lien "impairs" an exemption may be determined *in every case* by simply applying the formula set forth in Section 522(f)(2), regardless of the limitations on the exemption contemplated by state law.

### Impairment of the Richardsons' homestead exemption

◼ Applying these principles to this case, the Court concludes that Section 706 of Title 12 of the Oklahoma Statutes, which permits judicial liens to attach to homestead property, is one of those exceptions or restrictions on an exemption that is overridden by Section 522(f)'s policy that judicial liens on exempt property should be avoided to give the debtor a fresh start, notwithstanding the fact that such liens cannot be foreclosed while the property is occupied as homestead. Applying the formula of Section 522(f)(2), the sum of the lien ($3,878.65), other liens on the homestead ($0),[8] and the amount of the exemption that the Richardsons could claim if there were no liens on the property ($12,500.00) is $16,378.65, which exceeds the value that the Richardsons would have in the property in absence of any liens.

◼ The Court concludes, therefore, that the judicial lien of Healthcare which attached to the Richardsons' homestead impairs the Richardsons' homestead exemption and is therefore avoidable pursuant to Section 522(f)(1). Any other result would leave the Richardsons with a judicial lien on their homestead following their discharge, which could prevent them from borrowing against the homestead, selling the homestead and reinvesting the proceeds in a new homestead,

---

8. No other liens on the homestead, consensual or    otherwise, appear in the Richardsons' schedules.

obtaining insurance to protect their interest in the homestead or obtaining title insurance on a new homestead, and could expose them to complex litigation in any of the above circumstances.

IT IS THEREFORE ORDERED that the Motion to Avoid Lien is granted and the judicial lien on the homestead of the Richardsons is hereby avoided.