DENNIS, Circuit Judge,
with whom POLITZ and ROBERT M. PARKER, Circuit Judges, join, dissenting:
“Property that is properly exempted under § 522 [of the Bankruptcy Code] is (with some exceptions) immunized against liability for prebankruptcy debts. § 522(c).” Owen v. Owen, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (emphasis added). The issue in this case is whether the bankruptcy court’s judgment in favor of the debtor’s former spouse against the debtor for unpaid alimony, maintenance, and child support debts falls within one of § 522(c)’s exceptions so that the debtor’s otherwise exempted property is not immunized against liability, seizure and sale for their payment. Because the majority opinion decides this question in diametric contradiction to § 522(c)’s clear language, and in conflict with the decisions of the Supreme Court, other circuits, and numerous bankruptcy courts in this and other *484 circuits that have followed the panel opinion in this case, I respectfully dissent.
I. Background
Appellant Sandra Davis (Sandra) and her former husband, Thomas Cullen Davis (Mr. Davis), the debtor in bankruptcy, were divorced in 1968. Pursuant to their property settlement, support and child custody agreement, and divorce judgment, Mr. Davis agreed to make monthly payments to Sandra through January 1, 1991, and thereafter to pay her other sums subject to certain contingencies. Mr. Davis made all payments until he declared bankruptcy in 1987. In 1979, Mr. Davis married Karen Joyce Davis, also a debtor in this action. In 1984, Mr. Davis acquired property that- he claimed as his homestead. The property was unencumbered and valued at $500,000.
Mr. Davis and Mrs. Karen Davis filed a voluntary Chapter 7 petition in 1987, which was converted to a Chapter 11 case. They elected to exempt from the estate property that was exempt under the state homestead exemption laws. In an adversary bankruptcy court proceeding, Mr. Davis sought a determination that his indebtedness pursuant to the property settlement agreement and divorce judgment was dischargeable. Sandra counterclaimed, asserting that the indebtedness was nondischargeable under § 523(a)(5). In 1991, the parties compromised and acceded to a final consent judgment by the bankruptcy court declaring the debt to be for nondischargeable alimony, maintenance, and child support under § 523(a)(5) and awarding Sandra a principal sum of $250,000 plus $50,000 in attorney’s fees. Thus, the judgment Sandra seeks to enforce is not a “divorce judgment” as stated by the majority, but a judgment of the bankruptcy court based on Mr. Davis’s debts for unpaid alimony, child support, and maintenance.
Sandra moved in bankruptcy court for turnover relief ordering Mr. Davis to execute a warranty deed conveying the homestead to her to enforce the bankruptcy court judgment. After a hearing, the bankruptcy court concluded that Sandra could not levy upon Mr. Davis’s exempted homestead property to collect her judgment for alimony, maintenance, and child support, holding that the Bankruptcy Code does not preempt the state constitutional homestead exemption law. In re Davis, 170 B.R. 892, 898 (Bankr.N.D.Tex.1994). Sandra appealed. The district court affirmed. In re Davis, 188 B.R. 544 (N.D.Tex.1995). Sandra appealed to this court.
A panel of this court vacated the district and bankruptcy court judgments and remanded for further proceedings, holding that alimony, maintenance, and child support debts fall within the exceptions provided for by § 522(c) to the immunity of exempted property against liability for prebankruptcy debts; that the state homestead exemption laws were superseded by the Bankruptcy Code; and that the debtor’s property is liable to seizure and sale to pay the bankruptcy court’s judgment against the debtor in favor of his former spouse based on his unpaid alimony, child support, and maintenance debts. Davis v. Davis, 105 F.3d 1017 (5th Cir.1997).
II. Discussion
Property that is properly exempted under § 522 is, as a general rule, immunized by § 522(c) against liability for prebankruptcy debts. Owen, 500 U.S. at 308, 111 S.Ct. 1833. Certain debts are excepted from the protection of § 522(c), however, for which exempted property is liable: (1) nondis-chargeable debts for alimony, maintenance, and child support, § 523(a)(5), and taxes, § 523(a)(1); (2) valid liens that may not be avoided under the trustee’s powers and certain tax liens in exempt property that are not affected by the bankruptcy; and (3) nondis-chargeable debts for fraud and willful injury owed to a federal depository institutions regulatory agency acting as a conservator, receiver, or liquidating agent under §§ 523(a)(4) and (6). The debt at issue in the present case is a debt of a kind specified in § 523(a)(5), which makes nondischargeable any debt “to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of *485 record ... or property settlement agreement.” 11 U.S.C. § 523(a)(5).
Property that is exempted under § 522 and therefore immune from all other liability is liable for and may be seized to pay nondis-chargeable alimony, maintenance, and child support debts and other obligations excepted from § 522(c) protection. See Oiv&n, 500 U.S. at 308, 111 S.Ct. 1833 (“Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts.”) (emphasis added); Walters v. United States Nat’l Bank of Johnstown, 879 F.2d 95, 97 (3d. Cir.1989) (Tax and alimony and child support debts “are neither dischargeable nor exemptible.”); Resnick, Weintraub & Resnick, Bankruptcy Law Manual ¶ 4.08 at 4-54 (4th ed. 1996) (“Exempt property may be seized to pay nondischargeable tax liabilities and obligations to pay alimony, maintenance, or support.”); 2 David G. Epstein et al., BankruptCY, § 8-1 n. 17 (1992) (“Exemptions are not effective, however, with respect to two types of nondischargeable debts: tax debts and debts for alimony, maintenance, or child support.”); Don Campbell et al., Creditors’ Rights Handbook, A Guide to the Debtor-Creditor Relationship, § 20.03[4] (1993) (“Exempt property may be used to satisfy certain tax debts or for obligations for child support or alimony.”); David G. Epstein & Steve H. Nickles, Debt, Bankruptcy, Article 9 and Related Laws, 759 (1994) (“After bankruptcy, creditors with domestic claims excepted from discharge by section 523(a)(5) will have recourse to exempt property.”).
This reading of § 522 is in accord with its legislative history. Referring to that section the Senate report, with which the House report is virtually identical, reads:
Subsection (c) insulates exempt property from prepetition claims other than tax claims (whether or not dischargeable), and other than alimony, maintenance, or support claims that are excepted from discharge. The rule of Long v. Bullard, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt property.
S.Rep. No. 95-989, 95th Cong., 2d Sess. 76 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5862; see H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 361 (1978), reprinted in 1978 U.S.C.C.A.N. 6317. The drafters of the exemption section thus were aware that exempt property would be protected against some, but not all, nondischargeable debts. See Walters, 879 F.2d at 97.
In the present case, the panel opinion’s interpretation of § 522(c) is confirmed by the legislative history of § 522(c)(3), the third exception added by the Crime Control Act of 1990, Pub.L. No. 101-647, relating to the enforcement of certain nondischargeable debts owed to a federal depository institutions regulatory agency acting as a conservator, receiver, or liquidating agent. Referring to that new exception, the section-by-section analysis pursuant to the remarks of Representative Charles Schumer on the Banking Law Enforcement section of the Crime Control Act of 1990 provides:
Cmrently, section 522(c) provides that the property exemptions described elsewhere in section 522 do not apply in the case of tax obligations, alimony and child support responsibilities, or security agreements in which the otherwise exempt property is pledged as collateral. The new exception would apply to certain debts owed by institution-affiliated parties to federal depositary institutions regulatory agencies acting in their capacity as receiver, conservator, or liquidating agent. Specifically, the debts covered are debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, as described in section 523(a)(4); and for willful and malicious injury to another entity or to the property of another entity, as described in section 523(a)(6). These acts represent the highest form of financial criminality against a federally insured depositary institution by a person entrusted under the law with the care and safekeeping of the institution.
136 Cong. Rec. E3687 (Nov. 2,1990) (emphasis added). Also, Senator Biden, Chairman of the Senate Judiciary Committee, remarked:
*486 I accepted changes drafted by the House only because they maintained the core Senate-passed bankruptcy language that prevents all S & L wrongdoers from discharging their debts by filing for bankruptcy. The final language specifically preempts State homestead laws, which would otherwise allow S & L crooks to retain lavish homes through the excessive protections in some State bankruptcy laws.
Mr. President ... [u]nder the bill, major S & L offenders will spend time behind bars. Their assets will be seized. And every possible dollar will be recovered for depositors and taxpayers.
136 Cong. Rec. S17602 (Oct. 27, 1990) (emphasis added).
Bankruptcy courts consistently have interpreted the tax and tax lien provisions of §§ 522(c)(1) and (2), correlative to the alimony provision of § 522(c)(1), to authorize creditors and lienholders to reach the exempted property of the debtor to satisfy tax liabilities. See, e.g., In re Holl, 35 B.R. 206 (Bankr.D.Haw.1983) (IRS was able to levy on exempted proceeds of sale of homestead to satisfy a debt for a tax nondischargeable under § 523(a)(1)); In re Hebermehl, 132 B.R. 651 (Bankr.D.Colo.1991) (same as to exempted wages); In re Braddock, 149 B.R. 636 (Bankr.D.Mont.1992) (tax lien took priority over homestead exemption as to exempt proceeds derived from sale of homestead). Accord Davenport v. United States, 136 B.R. 125 (W.D.Ky.1991); Crow v. Long, 107 B.R. 184 (E.D.Mo.1989). See also In Re Reed, 127 B.R. 244 (Bankr.D.Haw.1991) (tax lien could be enforced against exempt pension plan contributions).
Section 522(c)(1) was not intended, as the majority asserts, merely to preserve judgments and judicial liens securing alimony, maintenance, and child support debts against exempted property. That purpose is effectuated by § 522(f)(1), which excepts from the debtor’s right under § 522 to avoid the impairment of the fixing of liens on exempted property, inter alia, judicial liens securing alimony, maintenance, and child support debts. Nor was § 522(c)(1) intended merely to put alimony or child support judgment creditors on the same footing with other creditors holding nondischargeable claims. That result is expressly accomplished by § 523(a)(5). The context in which § 522(c)(1) occurs, the text of the Bankruptcy Code as a whole, including particularly §§ 522(b), (c) and (f) and § 523(a)(5), in pari materia, and the legislative history of those provisions, clearly show that § 522(c)(1) does not redundantly duplicate the lien preservation function of § 522(f)(l)(A)(i) or the exception to discharge function of § 523(a)(5). By § 522(c)(1), Congress clearly intended to insulate nondischargeable alimony, child support, and maintenance debts from the effects of the debtor’s exemptions.
The en banc majority erroneously concludes that the Bankruptcy Code does not preempt the state homestead exemption laws. They fail to recognize the scope of the federal preemption of the field of bankruptcy law or the exclusivity of the federal-law basis of the debtor’s qualified right to exempt property from the bankruptcy estate. The power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount. U.S. Const, art. I, § 8, cl. 4; International Shoe Co. v. Pinkus, 278 U.S. 261, 265, 49 S.Ct. 108, 73 L.Ed. 318 (1929); Pereira v. United Jersey Bank, N.A., 201 B.R. 644, 678 (S.D.N.Y.1996). Congress exercised this power by enacting national, uniform bankruptcy laws, the most recent of which is the Bankruptcy Code, which necessarily exclude or displace any conflicting state regulation. International Shoe, 278 U.S. at 265, 49 S.Ct. 108. Consequently, states may not pass or enforce laws to interfere with or complement the Bankruptcy Code or to provide additional or auxiliary regulations. See id. at 266, 49 S.Ct. 108.
A. Recent Decisions Following the Davis v. Davis Panel Opinion Analysis[1]
A number of recent circuit court, bankruptcy appellate court, and bankruptcy *487 courts have agreed with some or all of the foregoing principles. Many of those courts have followed, quoted or cited the Davis v. Davis panel opinion in the present case with approval. See Bruin Portfolio, LLC v. Leicht (In re Leicht), 222 B.R. 670, 677, 678, 679 n. 9 (1st Cir. BAP 1998) (“[Although through § 522(b) Congress provided states with the opportunity to define the category and content of exemptions resident debtors may invoke in bankruptcy ..., it defined the operative effect of exemptions in bankruptcy through §§ 522(c) and (f).... Section 522(c) completes the Code’s treatment of nondis-chargeable debts, complementing inter alia §§ 523(a), 524(a)(3) and 727(b), by providing that exempt property is immunized against liability for prebankruptcy debts, including ‘some, but not all, nondischargeable debts’ .... § 522(c) may not be a one-way street. It may operate to subject exempt property to liabilities for which it could not be reached under state law.”) (quoting Davis, 105 F.3d at 1020, 1022-23); In re Gregory, 214 B.R. 570, 574 (S.D.Tex.1997) (“Section 522(c)(1) of the Bankruptcy Code provides that exempt property can be used to pay certain pre-petition debts such as those for taxes under § 523(a)(1) and for alimony and child support under § 523(a)(5). These debts are neither dischargeable nor exemptible. Because these provisions of the Bankruptcy Code preempt state homestead exemption law, ‘the state homestead exemption law is inoperative’ against claims pursuant to § 523(a)(1) and § 523(a)(5) and creditors with claims under these provisions are ‘entitled under the Bankruptcy Code to proceed against the debtor’s otherwise exempted property.’ ”) (quoting Davis, 105 F.3d at 1020, 1023); S & C Home Loans, Inc. v. Farr (In re Farr), 224 B.R. 438, 439 (Bankr.N.D.Cal.1998) (“A debtor’s rights under section 522(c) are governed by federal law, not state law. The clear intent of Congress in section 522(c) was to preserve property exempted in bankruptcy for satisfaction of tax and support obligations.”) (citing Davis, 105 F.3d at 1021-23); In re Pascucci, 225 B.R. 25, 28 (Bankr.D.Mass.1998) (“ ‘[FJederal law determines whether property is exempted and immunized against seizure and sale for prebank-ruptcy debts.’ ”) (quoting Davis, 105 F.3d at 1022); In re Van Zant, 210 B.R. 1011, 1015 (Bankr.S.D.Ill.1997) (“[W]hile state law identifies and quantifies the property a debtor may exempt from the bankruptcy estate in those states that have ‘opted-out’ of the federal exemptions, the Code does not adopt or preserve the state exemptions with all their built-in limitations.”) (citing Davis, 105 F.3d at 1022-23); In re Richardson, 224 B.R. 804, 808 (Bankr.N.D.Okla.1998) (“ ‘The power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount.... Consequently, states may not pass or enforce laws to interfere with or complement the Bankruptcy Code or to provide auxiliary regulations.’ ”) (quoting Davis, 105 F.3d at 1022). See also Patriot Portfolio, LLC v. Weinstein (In re Weinstein), 164 F.3d 677, 683 (1st Cir.1999) (Reavley, J.) (“We recognize that Congress afforded significant deference to state law by allowing bankruptcy debtors to choose state exemptions and by further allowing states to opt out of the federal exemption scheme entirely. Yet, ... the state’s ability to define its exemptions is not absolute and must yield to conflicting policies in the Bankruptcy Code.”) (citing Owen, 500 U.S. at 313, 111 S.Ct. 1833).
B. Response to Majority’s Erroneous Reasoning
The majority’s decision is based on two arguments: (1) that § 522(c) of the Bankruptcy Code is ambiguous as to whether the types of creditors’ claims that §§ 522(c)(l)-(3) except from immunization of exempted property against liability may be enforced against exempted property after bankruptcy; and (2) that the most plausible interpretation of § 522(c) is that it “leave[s] exempt property exposed to post-bankruptcy liability only to the extent it would have been exposed if the bankruptcy had not occurred.” Maj. Op. at 479. Both arguments are incorrect for the many reasons discussed below.
Perhaps the best short refutation of the majority’s arguments is contained in Professor Resnick’s explanation of how § 522(c) is designed to protect the debtor’s exempted property from most, but not all, nondis-charged creditors’ claims:
*488 It is easy to see that if property that is exempt under the Code but not under state law is available to creditors with non-dischargeable claims, the effect of the exemption may be wiped out.
Congress was aware of this problem, and, for this reason, the Code provides that exempt property may not be levied upon for any prepetition debt, whether or not the debt is discharged. There are, however, several exceptions. Exempt property may be seized to pay nondis-chargeable tax liabilities and obligations to pay alimony, maintenance, or support. Moreover, valid liens that may not be avoided under the trustee’s powers and certain tax liens in exempt property are not affected by the bankruptcy. A third exception was added in 1990 relating to the enforcement of certain nondischargeable debts owed to a federal depository institutions regulatory agency acting as a conservator, receiver, or liquidating agent.
Resnick, supra ¶4.08[1], at 4-53 to 4-54 (footnotes omitted).
Thus, § 522(c) is designed to perform two essential functions. In general, it shields exempted property from liability to seizure and sale for the payment of nondischargeable debts. As exceptions to that general rule, it allows piercings of the shield and permits levies upon exempted property for the payment of a small number of certain types of nondischargeable debts. The exceptions are narrowly and carefully drawn to uniformly further several policies deemed by Congress to be of national importance.
The indiscriminate rendering of § 522(c) by the majority opinion erroneously obliterates the important distinction Congress drew between the small class of particular types of nondischargeable debts specified by §§ 522(c)(l)-(3) and all other nondischargeable debts listed in § 523(a). The majority wrongfully relegates needy former spouses with unpaid alimony and child support claims, and other claimants given legislated preference by §§ 522(l)-(3), to the ordinary nondischargeable creditor class, forces them to compete with all comers for basic sustenance from the scarce non-exempt assets of the debtor, and defeats the goals envisioned by Congress in its well thought out and deliberately crafted legislation.
The majority opinion does not follow the plain meaning of the Bankruptcy Code’s words. Section 522(c) is not ambiguous, especially when it is read within the context of the Code as a whole. Contrary to the majority opinion, § 522(c)’s exception of specific debts named therein from the effects of the debtor’s exemptions is not qualified according to whether the debt is accompanied by a lien. The majority’s attempt to read such a qualification or distinction into § 522(c) is an unconcealed attempt to substitute its own policy making for that of Congress. When the words of § 522(c) are applied as written and within the context of the Code as a whole, they clearly and unambiguously conflict with and preempt the state homestead exemption laws with respect to the debtor’s alimony, child support, and maintenance obligations. Section 105 of the Bankruptcy Code unquestionably authorizes a bankruptcy court to issue any order, process, or judgment necessary to carry out the provisions of the Code, including an order to seize and sell the debtor’s property to satisfy the bankruptcy court’s judgment. Federal Rule of Civil Procedure 69(a) must be used by federal courts in accordance with other applicable statutes of the United States to enforce, not thwart, federal court judgments. The majority is clearly wrong in ignoring § 105 of the Bankruptcy Code and in misapplying Federal Rule of Civil Procedure 69(a) to unpreempt and exalt the state homestead exemption laws over the Bankruptcy Code and to defeat the enforcement of the bankruptcy court’s judgment.
1. The Meaning of “Exemption” and “Liability”
Section 522(c) is not “ambiguous” as the majority contends. The plain meaning of the term “exemption,” as used in § 522 of the Bankruptcy Code, refutes the majority’s argument that the term “liable,” as used in that section, means that a debtor’s property is only subject to a judgment lien, and remains immune from seizure and sale.
The Supreme Court has defined “exemption” as the “right ... which withdraws the *489 property from levy and sale under judicial process.” White v. Stump, 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924) (emphasis added). This court has defined “exemption” as “the freedom of property of debtors from liability to seizure and sale under legal process for the payment of their debts.” Clark v. Nirenbaum, 8 F.2d 451, 452 (5th Cir.1925), (emphasis added) (citing 25 C.J. § 8 (now 35 C.J.S. § 1) (I960)), cert. denied, 270 U.S. 649, 46 S.Ct. 349, 70 L.Ed. 780 (1926). Similarly, bankruptcy courts have defined an “exemption” as a “‘privilege allowed by law to a judgment debtor, by which he may hold property to a certain amount or certain classes of property, free from all liability to levy and sale on execution or attachment.’ ” In re Komet, 104 B.R. 799, 806 (Bankr.W.D.Tex.1989) (emphasis added) (quoting Blaok’s Law Dictionary 571 (5th ed.1979)).[2] See also In re Hudspeth, 92 B.R. 827, 830 (Bankr.W.D.Ark.1988) (same); In re Pritchard, 75 B.R. 877, 878 (Bankr.D.Minn.1987) (same). “Exemption” also has been defined as “a right given by law to a debtor to retain a portion of his personal property free from seizure and sale by his creditors under judicial process.” 31 Am.Jur.2d Exemptions § 1 (1989).
This definition of exemption is critical to an understanding of the meaning of the word “liable” in 11 U.S.C. § 522:
(c) Unless the case is dismissed, property exempt under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under Section 502 of this title as if such debt had arisen, before the commencement of the case, except—
(1) a debt of a kind specified in section ... 523(a)(5) of this title.
The word “liable,” as used in the section of the Bankruptcy Code entitled “Exemptions,” means “liable to levy and sale on execution or attachment.” In re Komet, 104 B.R. at 806. More specifically, the statutory reference to “liable,” in the context of exemptions, means that property exempted by a debtor under “Federal law” or “State or local law” pursuant to § 522(b)(2)(A) is free from liability for seizure and sale by his or her creditor under judicial process unless the debt is, inter alia, a debt “to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record.” 11 U.S.C. § 523(a)(5). Because alimony and child support debts are an exception to the debtor’s privilege to exempt certain property from seizure and sale (see discussion infra of “exceptions to exemptions”), it follows that the property is liable for seizure and sale by a former spouse with a judgment for alimony and child support that is nondischargeable under § 523(a)(5).
The majority asserts without any support in federal law that “liable” in § 522(c)(1) means only that an alimony and child support creditor can “perfect a judgment lien against the property ... although it is immune from seizure.” The majority cites only Texas law for the proposition that Congress intended “liable” in § 522(c)(1) as an esoteric proxy for “nondischargeable debt” and “nonavoidable lien.” [3] “Liable” taken in its usual sense and as used in § 522, however, means “liable for seizure and sale” and not merely “liable to attachment by a nonavoidable but unenforceable lien.” Section 522(c) of the Bankruptcy Code expressly abrogates a debtor’s privilege allowed by state law by which he may hold property free from all liability to levy and sale under legal process for the payment of debts defined by § 523(a)(5). By denying the debtor this privilege of exemption for certain nondischargeable debts, § 522(c) permits the property to be seized and sold to satisfy these obligations.
2. Section 522’s “Exception to Exemptions” For Family Support Debts
The Bankruptcy Code does not confer upon a debtor an absolute or unqualified *490 right to exempt property from seizure and sale. Section 522 expressly makes nondis-ehargeable debts for alimony, maintenance or child support an exception to the debtor’s general privilege to exempt certain property from liability for seizure and sale. Thus, property exempted under § 522 is nevertheless liable for seizure and sale to satisfy debts specified in § 523(a)(1) (tax obligations) and § 523(a)(5) (child and spousal support). See In re Citrone, 159 B.R. 144, 146 (Bankr.S.D.N.Y.1993). The majority uses circular and obverse reasoning in an attempt to show that Texas state exemption law (by virtue of Fed.R.Civ.P. 69(a)) “reverse preempts” federal court enforcement of judgments for non-dischargeable alimony and support debts under § 522(c) of the Bankruptcy Code. To the contrary, however, Congress, by the specific terms of § 522 and its constitutional power, has superseded and preempted the effect of the state exemption law upon this particular kind of debt. While the Bankruptcy Code allows a debtor to claim state exemptions, it also revokes this privilege as to the debtor’s nondischargeable child and spousal support obligations.
In addition to the numerous authorities cited above, other bankruptcy scholars and practitioners interpret 11 U.S.C. § 522(c) as establishing exceptions to the exemptions provided generally under § 522(b): The bankruptcy exemptions do not apply to protect property from seizure and sale to satisfy family support obligations. See Howard N. Cayne et al., Overview of Comprehensive Thrift and Bank Fraud Prosecution Act of 1990 and the Enforcement Provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, in Civil and Criminal Liability of Offioers, Directors, and Professionals: Bank & Thrift Litigation in the 1990’s, at 545, 562-63 (PLI Comm. Law & Practice Course Handbook Series, PLI Order No. A4-4355,1991) (“Under existing law, subsection (c) provides that the bankruptcy exemptions do not apply in the case of ... alimony and child support payments.”); see also John K. Villa & Robert M. Krasne, A Preliminary Review of Banking Enforcement Provisions Contained in Title XXV of the Crime Control Act of 1990, in Civil and Criminal Liability of Offioers, Directors, and Professionals: Bank & Thrift Litigation in the 1990’s, at 597, 616 (PLI Comm. Law & Practice Course Handbook Series, PLI Order No. A4-4355, 1991) (Section 2522 of the Crime Control Act of 1990 “amends the U.S. Bankruptcy Code, 11 U.S.C. §§ 523, 522, 365, 507 and 101, to create (i) two additional exceptions to the discharge of indebtedness, through bankruptcy, [and] (ii) a new category of obligations to which property exemptions do not apply. ...”). Significantly, section 2522(b) of the Crime Control Act of 1990, which amended 11 U.S.C. § 522(c), is entitled “EXCEPTION TO EXEMPTIONS.” Crime Control Act of 1990, PL 101-647, 104 Stat. 4789, 4866 (Nov. 29,1990); see also In re Colonial Realty Co., 980 F.2d 125, 133 (2d Cir.1992) (Section 2522 “add[ed] § 522(c)(3) as an additional exception to § 522 exemption”).
One commentator has declared that “[a]t present, a person with a claim for alimony, support, or maintenance has a solution under bankruptcy law.... If the debtor becomes insolvent, and a voluntary or involuntary petition in bankruptcy is filed, the homestead will not be exempt from this type of prebank-ruptcy debt.” Donna Litman Seiden, There’s No Place Like Home (Stead) in Florida— Should It Stay That Way?, 18 Nova l. Rev. 801, 859 (Winter 1994). The author’s reasoning follows that of this dissenting opinion: Because the Bankruptcy Code has the effect of subordinating the exemption to certain debts, creditors with claims for alimony, maintenance, or support can reach exempt property, by means of a forced sale to satisfy this preferred debt, regardless of the state law exemption. Id. at 815 & n. 257.
3. Preemption
To decide whether the Bankruptcy Code preempts the Texas homestead exemption laws, a court must begin by comparing § 522(c) with the state homestead constitutional and statutory provisions to determine if there is a conflict. Section 522(e) provides that during or after bankruptcy, exempt property is not liable for any debt that arose prepetition, or is deemed to have so arisen under § 502, except those debts specified in subparagraphs (1) through (3). See 11 *491 U.S.C. §§ 522(c)(1) — (3). This list includes: (1) debts for certain taxes and customs duties; (2) debts for alimony, maintenance, or support; (3) liens that cannot be avoided; (4) liens that are not void; (5) tax liens; and (6) certain nondischargeable debts owed to federal depository institutions. See id.
Congress has plenary power to enact uniform federal bankruptcy laws. See U.S. Const, art. 1, § 8, cl. 4; International Shoe, 278 U.S. at 265, 49 S.Ct. 108. Consequently, “[s]tates may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations.” International Shoe, 278 U.S. at 265, 49 S.Ct. 108 (noting that the intent of Congress in establishing uniform bankruptcy laws necessarily excludes inconsistent state regulation). I recognize that Congress afforded significant deference to state law by allowing bankruptcy debtors to choose state exemptions and by further allowing states to opt out of the federal exemption scheme entirely. See Weinstein, 164 F.3d at 683 (citing In re Boucher, 203 B.R. 10, 12 (Bankr.D.Mass.1996) (citing 11 U.S.C. § 522(b))). Yet, such deference does not warrant the conclusion that the detailed exceptions in § 522(c) to the general immunity from liability of the “property exempted” provided for by the same section must yield to or be controlled by the state exemption laws. As the Supreme Court recognized in discussing the interplay between § 522(f) and state exemption exceptions in Owen, the state’s ability to define its exemptions is not absolute and must yield to conflicting policies in the Bankruptcy Code. See Owen, 500 U.S. at 313, 111 S.Ct. 1833.
Only by adding a heavy Texas spin to gloss over the plain words and meaning of § 522(c) is the majority able to close its eyes to the obvious conflict between the state laws that exempt homestead property from liability to seizure and sale for alimony and child support debts and § 522(c)(1), which excepts nondischargeable alimony and child support debts from the effects of that exemption. The majority struggles to avoid acknowledging the conflict by theorizing that § 522(c)(1) does not mean what it says but strangely enough has a meaning that produces substantially the same result Texas courts have reached when a Texas court judgment creditor seeks to enforce her alimony and child support decree based solely on state law against the judgment debtor’s homestead: The former spouse may have her lien attached to the property but she cannot enforce it until the debtor dies or abandons his homestead.[4] In fact, as we have learned during the course of this case, under Texas law, she cannot enforce it against the proceeds of his sale of the homestead if he invests them in another Texas homestead within six months of the sale.[5]
The conflict between the Bankruptcy Code and the Texas homestead exemption laws, however, is too sharp and too real to be covered up by any amount of ingenious judicial gloss. The state laws provide for an exemption of property from liability to seizure and sale for the owner’s alimony and child support debts. The federal bankruptcy law in § 522(c)(1) provides for an exception to that exemption of the same property from liability to seizure and sale for the debtor-owner’s alimony and child support debts.
Consequently, there is a conflict between the state and federal laws. Therefore, it must be concluded that the state homestead laws are preempted by the federal Bankruptcy Code. State law is void to the extent it is in conflict with a federal statute. See Maryland v. Louisiana, 451 U.S. 725, 747, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981) and authorities cited therein.
4. Bankruptcy Court’s Broad Enforcement Powers Under 11 U.S.C. § 105
The majority insists that the Bankruptcy Code provides no means by which federal courts can enforce a final judgment rendered by a bankruptcy court.
Section 105 of the Bankruptcy Code, however, plainly states:
(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of *492 this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
11 U:S.C. § 105(a).[6]
This court has declared that “[t]he language of this provision is unambiguous. Reading it under its plain meaning, we conclude that a bankruptcy court can issue any order ... necessary or appropriate to carry out the provisions of the bankruptcy code.” In re Terrebonne Fuel and Lube, Inc., 108 F.3d 609, 613 (5th Cir.1997). The Supreme Court has declared that the “statutory directives [of § 105(a) ] are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships.” United States v. Energy Resources, Inc., 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). For example, a bankruptcy court has the authority under § 105 to void a debtor’s exemption in order to compensate the estate for damage caused by the debtor’s contempt of the court’s orders. In re Haddad, 68 B.R. at 951.
One leading commentator on bankruptcy law characterizes § 105 as “an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction.” 2 L. King, Collier On Bankruptcy § 105.01, at 105-3 (1996). The second sentence of § 105(a) was expressly intended to broaden the authority of bankruptcy courts to act, sua sponte, to promote the Code’s provisions. See In re Kestell, 99 F.3d 146, 148 (4th Cir.1996) (citing 132 Cong. Reo. S15074-05 (Oct. 3, 1986)).
In In re Moody, 837 F.2d 719 (5th Cir.1988), this court held that pursuant to § 105, “a district court has jurisdiction to enforce [nondischargeable] judgments against property other than property of a bankruptcy estate.... This jurisdiction properly extends to an order in aid of collecting valid claims and judgments of the bankruptcy trustee against the beneficiary of the trust.” Id. at 723-24. More recently, under the authority of Moody, the district court in Bass v. Denney, No. 3:97-CV-2043-P, 1998 WL 59486 (N.D.Tex. Feb. 9, 1998), held that the bankruptcy court had the power and authority under § 105 to fashion remedies to assist a judgment creditor in enforcing or collecting a nondischargeable judgment obtained against a debtor entered pursuant to 11 U.S.C. § 523. Id. at *1-2.
The broad grant of authority conferred upon bankruptcy courts and district courts by 11 U.S.C. § 105 permits these courts to issue “any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” Therefore, § 105 provides federal courts with a means of enforcing the bankruptcy court’s judgment based on nondischargeable alimony, maintenance, and child support debts by ordering the debtor’s homestead seized and sold to satisfy this nondischargeable, nonexemptible debt.
5. Assimilation of State Practices and Procedures
Federal Rule of Civil Procedure 69(a) provides that the procedure “on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.” Fed. R. Civ. P. 69(a) (emphasis added). Thus, the emphasized exception makes any applicable federal statute controlling, as well as any relevant civil rule, because those rules have the force of a statute. 12 Charles Alan Wright, Arthur R. Miller & Riohard L. Marcus, Federal PRACTICE & PROCEDURE § 3012, at 142 (1997) *493 (citing Gary W. v. State of La., 622 F.2d 804 (5th Cir.1980) (district court had power to order Secretary of Louisiana Department of Health and Human Resources to pay money judgment from Department funds even though Louisiana Constitution prohibited payment of judgment against state except from funds appropriated for such purpose by legislature), cert. denied, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981)).
Section 105 of the Bankruptcy Code is a fitting, fully applicable, and, therefore, controlling federal statute authorizing the bankruptcy court to enforce its judgment. Consequently, Federal Rule of Civil Procedure 69(a), and state practice and procedure adopted thereby, do not prevent a federal court from using whatever means are necessary to guarantee compliance with its judgments. The Fourth Circuit aptly summed up the relationship between state procedural vehicles and federal statutes as follows:
Even though we look to state law to determine the practice and procedure to be followed in the execution of a judgment, we do so in furtherance of federal law, giving effect to rules entitling parties to enforce federal judgments in federal courts. Consequently, any aspects of the assimilated practices and procedures that are uniquely designed to enforce state judgments are not assimilated, nor is any aspect that may be inconsistent with the federal policy of affording judgment creditors the right to a writ of execution to enforce money judgments in federal courts.
United States v. Harkins Builders, Inc., 45 F.3d 830, 833 (4th Cir.1995) (emphasis added) (citing 12 CHARLES Alan WRIGHT & ARTHUR R. Miller, Federal Practioe & PROCEDURE § 3012, at 69 (1973)).[7] Consequently, a debtor cannot accomplish “through the back door,” ostensibly under Rule 69(a), what cannot be accomplished under the federal Bankruptcy Code: invoking state exemption laws to immunize or protect homestead property from seizure and sale to satisfy nondis-chargeable, nonexemptible child and spousal support debts.
III. Conclusion
The Bankruptcy Code provides that the commencement of a voluntary bankruptcy case creates an estate comprised of legal and equitable interests of the debtor in property, wherever located and by whomever held. 11 U.S.C. § 541. Under the Code, an individual debtor has a qualified right, under defined circumstances, to exempt from the estate the same property that is exempt from levy under state, local, and nonbankruptcy federal law. 11 U.S.C. § 522(b)(2)(A). Property that is exempted from the estate is immunized against liability for prebankruptcy debts, subject to the exception of, inter alia, debts for alimony, maintenance, child support, taxes and other liabilities specified by the Code. 11 U.S.C. § 522(c). The debtor’s qualified right to exempt property from the estate, and the relationships between the debtor, his creditors, and exempted or non-exempted property with regard to prebankruptcy debts, are governed exclusively by federal law. Consequently, it is clear that the provisions of the state homestead exemption law that seek to immunize the debtor’s homestead against liability to seizure and sale for nondischargeable alimony and support debts conflict with and have been superseded by the Bankruptcy Code. The state law cannot alter the obligations of a bankruptcy debtor and his creditors as provided for by federal bankruptcy law. See International Shoe, 278 U.S. at 265, 49 S.Ct. 108; In re John Taylor Co., 935 F.2d 75, 78 (5th Cir.1991). For these reasons, the state homestead exemption laws are inoperative against the debtor’s former spouse in this case and she is entitled under the Bankruptcy Code to proceed against the debtor’s otherwise exempted property to satisfy her alimony, maintenance, and child support judgment. Accordingly, the judgments below should be vacated and the case should be remanded to the bankruptcy court with directions to allow the ap *494 pellant to obtain a writ of execution and all other relief to which she is entitled by law.

. The majority’s failure to acknowledge and address all but one of these cases is difficult to understand.

. The current definition of "exemption” in Black’s Law Dictionary is "[a] privilege allowed by law to a judgment debtor, by which he may retain property to a certain amount or certain classes of property, free from all liability to levy and sale on execution, attachment, or bankruptcy.” Black’s Law Dictionary 571 (6th ed.1990).

. See Maj. Op. at 482-83 & n. 9.

. See Maj. Op. at nn. 9-10.

. See Maj. Op. at n. 10.

. Bankruptcy courts have inherent power to enforce settlement agreements between parties. In re Haddad, 68 B.R. 944, 953 (Bankr.D.Mass. 1987); In re Bienert, 48 B.R. 326, 328 (N.D.Iowa 1985).

. More than 150 years ago, the Supreme Court declared that early federal acts, which prescribed that modes of process and proceedings in execution in state court should be applicable to federal courts in those states, did not manifest legislative intent to defeat the execution of judgments rendered in the courts of the United States. Duncan v. Darst, 42 U.S. 301, 306, 1 How. 301, 11 L.Ed. 139 (1843).